## MILISICH *v.* HILLHOUSE

### No. 2606

September 3, 1924.                    228 Pac. 307.

1. HUSBAND AND WIFE—PROPERTY ACQUIRED DURING COVERTURE PRESUMED COMMUNITY PROPERTY.

    All property acquired by either spouse during coverture is presumed community property, under Rev. Laws, sec. 2156.

2. HUSBAND AND WIFE — COMMUNITY PROPERTY REMAINS SUCH UNTIL TRANSMUTATION INTO SEPARATE PROPERTY IS CLEARLY SHOWN.

    Community property, within Rev. Laws, sec. 2156, remains community property until a transmutation into the separate property of one of the spouses is clearly shown.

3. HUSBAND AND WIFE — SAVINGS OF WIFE FROM HUSBAND'S ADVANCES FOR HOUSEHOLD EXPENSES REMAIN COMMUNITY FUNDS.

    Savings of the wife, made from husband's advances for household and other expenses, remain community funds.

4. HUSBAND AND WIFE—PROOF OF FACTS REQUIRED TO OVERCOME PRESUMPTION PROPERTY WAS COMMUNITY PROPERTY.

    Where the presumption existed that a car was community property, within Rev. Laws, sec. 2156, the wife could not overcome such presumption by mere naked statements that the car was a gift to her, or that the money and the old car given in payment were gifts, but it was necessary to present facts from which the conclusion could be reached that the property was not community property.

5. HUSBAND AND WIFE—FUNDS WIFE HAD IN HOUSE PRESUMED COMMUNITY FUNDS, IN ABSENCE OF SHOWING TO CONTRARY.

    Funds which the wife had at the house, and paid on car claimed by her, *held* presumed to be community funds, within Rev. Laws, sec. 2156, in the absence of showing to the contrary.

6. HUSBAND AND WIFE—THAT BILL OF SALE OF AUTOMOBILE RAN TO WIFE HELD NOT TO OVERCOME PRESUMPTION CAR WAS COMMUNITY PROPERTY.

The mere fact that a bill of sale of automobile ran to wife *held* not to affect the presumption that the car was community property, within Rev. Laws, sec. 2156.

See 31 C. J. sec. 1141, p. 47, n. 81; p. 48, n. 93, 95; sec. 1142, p. 49, n. 3; sec. 1144, p. 54, n. 48 (new), 55; sec. 1171, p. 79, n. 23.

APPEAL from Second Judicial District Court, Washoe County; *Thomas F. Moran,* Judge.

Action by Thora J. Milisich against J. D. Hillhouse, as Sheriff of Washoe County. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. **Affirmed. Rehearing denied.**

*Mack & Green,* for Appellant:

If it is possible in this state for wife to be possessed of separate property, this is such case. Rev. Laws, 2155, 2168, 2169, 2171, 2172.

A deed of conveyance or bill of sale is not merely evidence of gift or other grant; it is the gift or grant itself and ipso facto operates to transfer title of property. Where conveyance is made to one and consideration paid by another, a trust is presumed in favor of latter only between strangers, and not between persons bound by some natural, moral, or legal obligation to provide. The transaction was therefore a gift. Hamilton v. Hubbard, 134 Cal. 604.

Neither wife's equitable nor statutory separate estate is liable for debts of her husband. 21 Cyc. 1473.

Delivery of horse and buggy by husband to his wife, made while he is solvent, followed by possession on her part which is actual and continuous, vests title in her, and is good though he may use them more or less. Morgan v. Ball, 5 L. R. A. 579; Lannint v. Fogler, 16 Ohio (C. C.), 151; Barnum v. Farthing, 40 Haward Pr. Rep. (N. Y.) 25.

Fact that husband has control of, or uses property of wife does not raise presumption that he was owner of it. If wife purchased property it is hers, even though

husband signed deferred payment notes for part of purchase price. Campbell v. Fillmore, 58 Pac. 790; Fox v. Tyrone, 16 South 5.

Husband may make gift to his wife of anything he chooses, so long as it does not prejudice existing creditors. Jansen v. Lewis, 42 Nev. 556; 21 Cyc. 1397; 90 Am. St. Rep. 553; Stewart on Husband and Wife, sec. 116; Corbett v. Sloan, 99 Pac. 1025.

Sale of personal property, coupled with delivery and continuous change of possession immediately vests title in purchaser, and when transfer is between husband and wife, rules governing change of possession are not applied with same strictness as when transaction is between strangers. Morgan v. Ball, supra; Hamilton v. Hubbard, supra; Harvey v. Stowe, 219 Fed. 17; Van Sickle v. Wells, Fargo & Co., 105 Fed. 16.

Declarations of husband made at time when he is free from debt are admissible against subsequent creditors to prove gift in favor of his wife. First National Bank v. Holland, 33 S. E. 126; German Ins. Co. v. Bartlett, 58 N. E. 1075; Corbett v. Sloan, supra.

Even if automobile was purchased with community funds or separate funds of husband, title passed to wife by bill of sale and remained in wife to date of attachment. Status was fixed at time of purchase. Deschamps' Estate, 137 Pac. 1009; Guy v. Guy, 115 Pac. 731; Barrett v. Franke, 46 Nev. 170.

Presumption that all property acquired after marriage is community property is overcome by course of dealing between spouses which clearly indicates contrary fact. Lanigan v. Miles, 172 Pac. 896.

*Cooke, French & Stoddard,* for Respondent:

Money saved by wife from money given her by her husband for household expenses remains community property. 5 R. C. L. sec 31; Abbott v. Wetherby, 33 Pac. 1070.

Circumstances in wife's favor that bill of sale was made in her name is utterly obliterated by husband's signing application card for license, fully and correctly filled out, with himself as owner of car.

Wife must prove by preponderance of evidence and clear and convincing testimony that property once community has been transmuted to her separate estate. Evans v. Covington, 70 Ala. 440.

If wife did receive money by gift from her husband it was hopelessly commingled with property admittedly community. Funds thus commingled retain their character of community property. 21 Cyc. 1655; Barrett v. Franke, supra.

Secret agreement between husband and wife will not affect rights of existing or subsequent creditors where parties continue to live together. Lanigan v. Miles, 172 Pac. 894; McCullough v. Henshaw, 225 Pac. 898.

Statements of either party of ownership of wife would be merely their conclusions. Barrett v. Franke, supra. If error was committed in excluding such testimony it was only harmless error. Such evidence is clearly self-serving.

Wife in this case pleaded purchase, not gift. Many of appellant's authorities refer to gifts, and are not applicable.

## OPINION

By the Court, COLEMAN, J.:

This is an appeal from a judgment in favor of the defendant in the action, and from an order denying a motion for a new trial. We will allude to the parties as plaintiff and defendant, as they were in the trial court.

The defendant, as sheriff, acting under a writ of attachment, attached a Haynes automobile in an action to recover a money judgment against one Steve B. Milisich, the husband of the plaintiff, of whom we will speak as "Steve." This action was instituted to recover the possession of the car, upon the theory that it was the separate property of the plaintiff. On the other hand, it is maintained that the car is community property.

1, 2. With certain exceptions not involved in this case, it is provided by section 2156, Rev. Laws of Nevada, 1912, that all property acquired after marriage

by either husband or wife is community property. It is not contended that the car in question, or the consideration given for it, was acquired before the marriage of the parties mentioned. Hence we are brought to a consideration of whether the evidence in this case shows a transmutation of community property into the separate property of the plaintiff. In determining this case the trial court declined to consider as applicable certain well-established rules of law urged upon it by counsel for the plaintiff, and, while they are urged upon us at great length, we fail to see their application to the situation in hand, and will endeavor to state the principles of law which we think control, and which, in fact, were applied by the trial court.

It being conceded that the plaintiff had no separate property at the time of her marriage, and it not being contended that she acquired any by descent or devise or by gift, except as hereinafter stated, we come to consider briefly the facts, but before doing so we wish to lay down certain well-established principles of law which apply to the facts of the case. First, the presumption prevails that all property acquired by either spouse during coverture is community property; and, second, that it remains such until clearly shown to have been transmuted into the separate property of one of the spouses. Laws v. Ross, 44 Nev. 405, 194 Pac. 465; Barrett v. Franke, 46 Nev. 170, 208 Pac. 435.

3, 6. The evidence shows that at the time the Milisiches were married Steve was engaged in business and had a personal account at the Reno National Bank, and that some time after the marriage he arranged matters so that his wife could draw upon that account. This arrangement continued during the period covered by the transactions involved. It also appears that there was a safety deposit box to which they both had access, for a considerable length of time, at least; that each had a savings account at some bank in Reno. About 1916 Steve purchased a Reo car. This was the first car acquired by the family. The plaintiff testified that Steve gave her this car, and that she traded it in for

another Reo, paying the difference, and in 1920 traded in the second Reo for the Haynes car in question, paying a difference of $1,700 in cash. Plaintiff claims that the major portion of the cash she used in paying the difference in these trades was savings from money her husband gave her with which to run the house.

In considering the question as to whether or not the savings from the money advanced by Steve for household expenses was separate property, the trial court held that they were not, quoting from 5 R. C. L. p. 843, sec. 21, as follows:

"Money saved by the wife out of money given to her by her husband for household and other community expenses does not thereby become separate estate, but remains community property, liable for community debts."

This is the well-recognized rule, 31 C. J. p. 79, sec. 1171.

With the rules of law, which we have stated, in mind, let us briefly consider the evidence. Just here we may say that the circumstances are such that the important question in the case is one of fact merely, and, there being sufficient evidence to support the judgment, we would not be justified in reversing it. It may be observed that it appears from the opinion of the trial judge, which, pursuant to statute, is incorporated in the record, that he rejected the testimony of the Milisiches. Hence the main question for us to determine is: Did the trial court abuse its discretion in this particular?

The plaintiff was confronted with the necessity of overthrowing the presumption of law that the car was community property. This could not be done by mere naked statements that the car was a gift, nor that the money and the car, which were given as consideration for the car in question, were gifts, but it was necessary to present facts from which the conclusion could be reached that they were not community property. It is clear from a reading of the testimony of both of the Milisiches that they were desirous of establishing the claim of plaintiff. The trial judge filed a lengthy

opinion, showing studious and careful consideration of the facts. Since the case must turn solely upon the sufficiency of the evidence to support the judgment, we might properly refrain from considering the evidence at all, and shall consider it but briefly.

The Milisiches contradict each other in their testimony and, in at least one instance, Mrs. Milisich contradicts herself. For instance, she testified at one time that Steve made her a present of the Reo first bought, and that she turned that in and got the second one, paying the difference in cash. At another time she testified that Steve made her a present of both the Reos. Steve testified that he bought both Reos, turning in the first one for the second, and paying the difference. Mrs. Milisich testified:

"Q. Who owned the Reo car? A. It was a gift to me from my husband.

"Q. In what year? A. When the first 1918 model came out. I think it was in 1917, Mr. Green.

"Q. Latter part of 1917? A. No, it was in the spring. You see, the models came out before, generally a year before, the late models.

"Q. You had a—it was a 1918 model, was it? A. It was a 1918 model, and I think we got it in 1917.

"Q. Did you have a car before that? A. Yes, I had a car before that.

"Q. What did you do with the first car you had? A. We turned that in as partly trade for the 1918 model.

"Q. What was the model of the first car? A. I think that was a 1918, but I don't remember.

"Q. Who owned the 1918 car? A. That was also my car.

"Q. And the 1918 car you traded in for the 1919? A. Yes, sir.

"Q. 1918 you traded in for the Haynes that is now in controversy? A. Yes.

"Q. Did you drive either or both of those cars? A. I drove both of them.

"Q. You drove all of them. A. Well, I thought you meant only the Reos. Yes, I drove all three of the cars from the very beginning that we had them."

The question is: How could Steve turn in the first Reo on a purchase of the second one if it was the separate property of his wife? On the other hand, how could Steve have made his wife a present of the second Reo, if she had purchased it? The inconsistency is glaring. But the main question in the case is whether the money deposited in the name of the plaintiff was her separate property. This money was accumulated in the main, she testified, from savings of money turned over to her by Steve for household expenses. Some of the money so accumulated was put into bonds, according to her testimony. In this connection, let us consider the transaction whereby the Haynes car was acquired. Mr. Wiley, the agent for the Haynes car, testified:

"Mr. Milisich, in the presence of another party, came into our place and looked over the Haynes automobiles and seemed quite interested in them. We had some little conversation; he told me that they had a Reo car that they would want to trade in, if they made any deal or transaction."

Again Mr. Wiley testified:

"After some few minutes' conversation with Mr. Milisich, he went out and I interviewed him on the street several times afterwards, and we gradually arranged a trade in between the used car and this other. However, he informed me that it would be quite largely up to his wife as to the selection; that she was purchasing the car, or it was for her, and it was immaterial to him."

All of these conversations were had with Steve before Mrs. Milisich saw the car. From the testimony it appears that Steve was the moving party, that he first conceived the notion of making a trade, and that the trade was "gradually" arranged between him and Mr. Wiley, though it is true that Mrs. Milisich had to be satisfied. She had to be satisfied, no doubt, because she did the driving; furthermore it was only natural that she should have been, in any circumstances. She testified that she drove from the first for the reason that Mr. Milisich was not a careful driver. When the deal was finally closed, it was upon the turning in of the 1918 Reo

and the payment of $500 cash, and the depositing of liberty bonds of the value of $1,200 to secure the deferred payments. It is admitted that Steve paid the $500 when the car was gotten, and also paid the $1,200 and took up the bonds, but it is contended that the plaintiff reimbursed him for these payments out of her savings, as before stated. The trial court held that, if such were the fact, the savings of the wife made from advances by the husband for household expenses were community property, as herein pointed out, and hence the payment, in any event, was made, not from her separate estate, but from the community funds.

It is also said by the plaintiff that $200 of the $1,200 was from money she had at the house. There is no showing that the $200 was not community funds, and the presumption is that it was. As to the bonds which she put up as security for the deferred payment of $1,200, some of these the plaintiff said were purchased with her savings, some were a gift from Steve, and others were obtained from other persons. Her testimony as to where and how she obtained these bonds was unsatisfactory. At first she flatly refused to tell of whom she got them.

While the bill of sale to the Haynes car, executed by Wiley Bros., was to plaintiff, the license on the car was issued at their request to the husband, and at the time the car was attached the license bore a statement signed by Steve, as the owner of the car. The mere fact that the bill of sale was to plaintiff did not affect the presumption that the car was community property. The trial court, in deciding the case, applied the correct principles of law, and we cannot say that it erred in its findings of fact. From a consideration of the entire record it is clear that the judgment should be affirmed.

It is so ordered.

### ON PETITION FOR REHEARING

April 11, 1925.

*Per Curiam:*

Rehearing denied.