IN THE MATTER OF THE PETITION OF MONROE K. FULLER FOR A JUDGMENT ESTABLISHING THE FACT OF THE DEATH OF MAY BELL FULLER, AND THE TERMINATION OF HER INTEREST IN THE PROPERTY HEREIN DESCRIBED.

WILLIAM J. BRINE, CLESSON E. BRINE AND ROBERT BRINE, APPELLANTS, V. MONROE K. FULLER, RESPONDENT.

No. 3421

June 4, 1945. 159 P. 2d 579.

*H. R. Cooke,* of Reno, for Appellants.

*Harold O. Taber,* of Reno, for Respondent.

## OPINION

By the Court, TABER, C. J.:

Section 1 of "An Act for the determination of the termination of the interests of a deceased person in real property," approved February 23, 1939, Stats. of Nev. 1939, chap. 18, p. 14, 2 N. C. L. Supp., sec. 9895, pp. 1382, 1383, reads:

"Whenever title to or an interest in real property is affected by the death of any person, any other person who claims any interest in such real property, which interest is affected by the death of such person, may file in the district court of any county in which any part of such real property is situated, a verified petition setting forth those facts, and particularly describing the real property, the interest of the petitioner, and the interest of the deceased therein.

"The clerk shall set the petition for hearing by the court, shall give notice thereof by causing a notice of the time and place of the hearing to be posted at the courthouse in the county where the court is held, at least ten days before the hearing; provided, the court may order

such further notice to be given as in his judgment may seem proper.

"The court shall take evidence for or against the petition, and may render judgment thereon establishing the fact of such death and the termination of the interest of the deceased in the real property described in the petition.

"A certified copy of the decree may be recorded in the office of the recorder of each county in which any part of the land is situated."

Pursuant to said statute, and on the 25th day of January 1944, Monroe K. Fuller filed his verified amended petition in the Second judicial district court, Washoe County. The petition alleges that May Bell Fuller died in the city of Reno, Washoe County, Nevada, on the 12th day of December 1943; that at the time of her death she was a resident of the State of Nevada and the wife of petitioner; that she and petitioner were married and had been living together as husband and wife for many years prior to her death; that at the time of her death she left estate in said Washoe County consisting of a community interest in certain real property (particularly described in the petition) located in said county; that the whole of said property was the community property of said May Bell Fuller and Monroe K. Fuller, having been acquired by them subsequent to their marriage; that as the surviving husband of said May Bell Fuller, petitioner is entitled to have the whole of said property vested in him without administration and declared to be his sole and separate property, all pursuant to the provisions of section 1 of "An Act to provide for the disposition of community property," approved March 26, 1937, Stats. of Nev. 1937, chap. 198, p. 417, 1 N. C. L. Supp., sec. 3395.01, p. 432. The opening language of said section 1 is as follows: "Upon the death of the wife the entire community property shall vest, without administration, in the surviving husband * * *."

The petition concludes with a prayer that after notice and hearing "a decree be made and entered decreeing

that the said May Bell Fuller died on the 12th day of December 1943 and that the title to said community property vested in petitioner on the 12th day of December 1943; and for such other and further orders as may be meet."

The only notice of the hearing was given by posting at the county courthouse as prescribed by the statute.

On February 18, 1944, William J. Brine, Clesson E. Brine and Robert Brine filed their verified answer and objections to the surviving husband's said petition. They allege that they are the sons of the deceased May Bell Fuller by a previous marriage, and that, as such sons, they are her heirs at law. They deny that the interest of said deceased in the property was a community interest; deny that any of said property was the community property of deceased and petitioner; admit that the property was acquired subsequent to the marriage of petitioner and May Bell Fuller; deny that the property or any part thereof or any interest therein was acquired by petitioner; deny that petitioner is entitled to have said premises or any part thereof vested in him without administration, or declared to be his sole or separate property. They further allege, on information and belief, that the entire consideration for and purchase price of said premises was paid by and with the separate funds of their mother. They also allege that all of the property described in the petition, together with the rents, issues, and profits thereof at all times since June 1, 1929 (the date of purchase from the Corrises), was the separate property of their mother who died intestate as to the same, and that petitioner is entitled to one third and no more of said separate estate. The prayer of the answer and objections is that petitioner take nothing by his proceeding, and that the administration of the estate of said May Bell Fuller now pending in said district court may proceed in the due and orderly course. Petitioner did not file a reply to said answer and objections.

There is no suggestion in the record that May Bell Fuller left any heirs at law other than her three sons

and petitioner. Testimony given by and in behalf of the three sons indicates clearly that they and petitioner are her sole heirs at law; and petitioner's testimony is to the same effect. All said heirs, with their respective counsel, were present in court, and participated in the hearing.

At the beginning of said hearing and before any evidence was introduced, objection was interposed to any further proceedings, upon two grounds: First, that objectors' allegation that the acquisition of the property was with the use of the separate funds of the deceased Mrs. Fuller is admitted by petitioner's failure to reply to their answer and objections; second, "that the act of 1939 which purports to give the Court the power and jurisdiction to proceed in some matters in an informal way to determine the title to real property is not the law. And if there ever was a constitutional law it was repealed by the Act of 1941, being the General Probate Act, c. 107, which in the conclusion, paragraph 326, reads, 'An Act Entitled "An Act to Regulate the Settlement of the Estates of Deceased Persons," approved March 23, 1897, and all acts amendatory thereof or supplemental thereto, and also all acts or parts of Acts in conflict with this act, are hereby repealed,' and so on." Neither of the objections was sustained.

The trial court, after considering the petition and objections and the evidence introduced by the respective parties in support thereof, found that all the allegations of the petition were true; that due and regular notice of the hearing of the petition had been given according to law and the order of the court; that the real estate particularly described in the petition was the community property of May Bell Fuller and Monroe K. Fuller, and that it was acquired by them subsequent to their marriage by the work and earnings of the petitioner and paid for with community funds. By its decree the court established the fact that May Bell Fuller died in the city of Reno, Washoe County, Nevada, on the 12th day of December 1943. It further ordered, adjudged and

decreed "that by reason of the death of May Bell Fuller, also known as Maybelle Fuller, her interest in and to the above-described property has been and the same is hereby declared to be terminated," and "that the aforesaid property, and the whole thereof be, and the same hereby is set over unto the aforesaid Monroe K. Fuller, and the same is hereby declared to be the sole and separate property of said Monroe K. Fuller." This appeal is from said decree and from an order denying defendants' motion for a new trial.

Henceforth, in this opinion, petitioner (respondent on this appeal) will be referred to also as plaintiff and appellants as defendants.

■ Appellants' first assignment of error is that the trial court erred in overruling, in effect, their objection that plaintiff, by failing to reply, admitted defendants' allegation that the property was purchased out of the wife's separate funds. This assignment is not well taken, for even if the provisions of the civil practice act are applicable in a case of this kind, said allegation is not "new matter constituting a defense" within the meaning of sec. 8602 N. C. L., 1929. Ferguson v. Rutherford, 7 Nev. 385; Parks v. W. U. T. Co., 45 Nev. 411, 197 P. 580, 204 P. 884; Thiess v. Rapaport, 57 Nev. 434, 66 P. 2d 1000, 69 P. 2d 96; Gerbig v. Gerbig, 61 Nev. 387, 128 P. 2d 938; Stone v. Webster, Idaho, 144 P. 2d 466; H. A. Seinsheimer & Co. v. Jacobson, 24 N. M. 84, 172 P. 1042; Brown v. Jones, 137 Or. 520, 3 P. 2d 768; Stephens v. Conley, 48 Mont. 352, 138 P. 189, Ann. Cas. 1915D, 958; Shropshire v. Pickwick Stages, Northern Division, 85 Cal. App. 216, 258 P. 1107; 1 Bancroft's Code Pl., secs. 265, 266, 466; 1 Ten Year Supp., Bancroft's Code Pl., Pr. & Rem., secs. 265, 266, 466; 41 Am. Jur., "Pleading," secs. 156, 175; 49 C. J., "Pleading," secs. 396, 397, 399; Pomeroy's Code Remedies, Fifth Edition, sec. 549.

■■ Appellants contend that the act of 1939, in pursuance of which the present proceeding was instituted, was repealed by sec. 326 of the 1941 act concerning the

estates of deceased persons, Stats. of Nev. 1941, chap. 107, pp. 239, 240, 2 N. C. L. Supp., sec. 9882.326. Said section reads in part as follows: "An act entitled 'An Act to Regulate the Settlement of the Estates of Deceased Persons,' approved March 23, 1897, and all acts amendatory thereof or supplemental thereto, and also all acts or parts of acts in conflict with this act, are hereby repealed * * *." In support of their contention appellants refer to secs. 243, 306 and 297 of said deceased persons act, and further point out that distribution is prohibited by that act until debts of the estate are paid. It is the opinion of the court that chap. 18 of the 1939 Statutes of Nevada, hereinbefore quoted, was not repealed by the deceased persons act of 1941. In this state, as we have seen, upon the death of the wife, the entire community property vests, without administration, in the surviving husband. If the property in this case was in fact community property, it vested, upon the wife's death, in petitioner, without administration, and never constituted any part of her estate. In re Rowland's Estate, 74 Cal. 523, 16 P. 315, 5 Am. St. Rep. 464; King v. Pauly, 159 Cal. 549, 115 P. 210, Ann. Cas. 1912c, 1244; In re Bergman's Survivorship, Wyo. 151 P. 2d 360; 11 Am. Jur., "Community Property," secs. 82, 85; Annotation, 82 Am. St. Rep. 365.

■ In assignment No. 2 appellants maintain that the lower court erred in assuming jurisdiction to determine whether the property was community or separate, and in rendering judgment that it was community property and that its title, upon the death of Mrs. Fuller, vested in respondent. So far as shown by the record, these contentions are made for the first time in appellants' opening brief on this appeal.

If defendants, instead of appearing generally by filing an answer going squarely to the merits, had appeared specially and solely and only for the purpose of objecting to the jurisdiction of the trial court upon the ground that it had no jurisdiction under the provisions of said sec. 9895 to decide whether the property was community or

separate, or to decree that it had vested in the petitioner, they would have been entitled to a reversal if their objection had not been sustained. King v. Pauly, 159 Cal. 547, 115 P. 210, Ann. Cas. 1912c, 1244; In re Bergman's Survivorship, Wyo., 151 P. 2d 360; 2 Freeman on Judgments, Fifth Edition, p. 1854, sec. 877, n. 18; 5 Cal. Jur., "Community Property," sec. 25, pp. 325, 326; 4 Bancroft's Code Pr. and Rem., p. 3739, sec. 2909, n. 2.

But all the heirs answered and went to trial squarely on the merits. They did not ask for a jury trial, and they failed to raise the jurisdictional points embraced in assignment No. 2 until their opening brief on this appeal. The case is thus analogous to a suit to quiet title, and the district court had jurisdiction to determine whether the property was separate or community, and to decide who owned it after Mrs. Fuller's death. The decision of that court is, therefore, binding upon defendants unless the record discloses prejudicial error in some other respect. King v. Pauly, 159 Cal. 547, 115 P. 210, Ann. Cas. 1912c, 1244; Faxon v. All Persons, etc., 166 Cal. 707, 137 P. 919, L. R. A. 1916b, 1209; 5 Cal. Jur. p. 326, n. 18; 2 Freeman on Judgments, Fifth Edition, p. 1854, nn. 19, 29; Constitution of Nevada, art. VI, sec. 6 (sec. 114 N. C. L., 1929) ; sec. 8382, N. C. L. 1929; 1 Bancroft's Code Pr. and Rem., pp. 966, 967, sec. 654, nn. 12, 13, 19, 20, pp. 968, 869, sec. 655, nn. 8, 9, pp. 970–971, sec. 657, nn. 1, 4; 4 Bancroft's Code Pr. and Rem., p. 3739, sec. 2909, n. 3.

Mrs. Fuller and plaintiff were married May 31, 1921. The property in dispute was deeded to plaintiff by Caesar Corris and his wife June 1, 1921. On the 19th of January 1924, plaintiff made, executed and delivered a grant, bargain and sale deed of the property to Mrs. Fuller "and to her heirs and assigns forever," the consideration being $10 "and other good and valuable considerations." Near the end of this deed we find the following paragraphs:

"Together with the tenements, hereditaments and appurtenances thereunto belonging or appertaining,

and the reversion and reversions, remainder and remainders, rents, issues and profits thereof.

"To have and to hold the said premises, together with the appurtenances, unto the said party of the second part, and to her heirs and assigns forever, except a certain joint note and mortgage in the sum of Two Thousand Four Hundred Dollars ($2,400.00) given by the parties hereto to Caesar Corris and Kate Corris, his wife, dated the 3d day of June, 1921, which the said second party assume and agrees to pay, according to the terms and conditions thereof, and which is made a part of the consideration hereof."

There is no evidence in the record that the Corris indebtedness was paid wholly or in part out of Mrs. Fuller's separate estate. On the contrary, the evidence shows, and the trial court found, that the property "was acquired by them subsequent to their marriage by the work and earnings of the petitioner and paid for with community funds." The deed from respondent to his wife contains no recital that the property was thenceforth to be her separate estate. Mrs. Fuller and plaintiff resided on the premises from the time of their marriage until her death on December 12, 1943. The record title to the property remained in her name from said 19th day of January 1924 until her death. One of appellants' contentions is that plaintiff, by his said deed to Mrs. Fuller, conveyed to her any and all interest he may theretofore have had in said property, and his third assignment of error is that the trial court "erred in overruling appellants' objection to questions to respondent tending to impeach the title respondent had vested in deceased by his deed to her of January 19, 1924, exhibit 7; said objection being that respondent and grantor in said deed was estopped to impeach same."

■■ From the time the property was deeded to plaintiff (June 1, 1921) until January 19, 1924, when he deeded it to Mrs. Fuller, the premises were presumptively community property. Section 3356 N. C. L. 1929; In re Wilson's Estate, 56 Nev. 353, 53 P. 2d 339; Jones

v. Edwards, 49 Nev. 299, 245 P. 292; Milisich v. Hillhouse, 48 Nev. 166, 228 P. 307; 41 C. J. S., Husband and Wife, sec. 489, p. 1031, note 1. By the deed of January 19, 1924, they became, presumptively, the separate property of Mrs. Fuller. Section 3373, N. C. L. 1929; 41 C. J. S., Husband and Wife, sec. 491, p. 1047, note 12; 11 Am. Jur., "Community Property," sec. 431, p. 202, n. 17. But the latter as well as the former presumption was rebuttable. In re Wilson's Estate, 64 Cal. App. 2d 123, 148 P. 2d 390, 392; Williamson v. Kinney, 52 Cal. App. 2d 98, 125 P. 2d 920; Horsman v. Maden, 48 Cal. App. 2d 635, 120 P. 2d 92; In re Bruggemeyer's Estate, 115 Cal. App. 525, 2 P. 2d 534; Taylor v. Hollingsworth, Tex. Civ. App., 169 S. W. 2d 519; Burruss v. Murphey, Tex. Civ. App., 5 S. W. 2d 612; Buse v. Buse, Tex. Civ. App., 287 S. W. 141; 41 C. J. S., Husband and Wife, sec. 491, p. 1047, note 16; 11 Am. Jur., "Community Property," sec. 44, p. 203, n. 8; 3 Cal. Jur. Supp. 568, sec. 71, nn. 14, 15; 5 Cal. Jur., 321, n. 19; Principles of Community Property, de Funiak, vol. 1, sec. 147, p. 411.

 In this state a husband may convey all his interest in community property to his wife either for a valuable consideration, or by way of gift. But the evidence necessary to show a transmutation of community property into separate property must be of a clear and convincing character. Stockgrowers' & Ranchers' Bank v. Milisich, 52 Nev. 178, 283 P. 913, 914. In the case at bar the trial court found that the property was paid for with community funds, and that it was community property at the time of Mrs. Fuller's death. There is ample evidence in the record to support these findings, and we therefore conclude that any presumption that the premises were separate property was, in the judgment of said court, satisfactorily overcome by the evidence adduced by and in behalf of plaintiff. Plaintiff was not estopped, because of his said deed, from offering evidence to show that the premises were in fact community property at the time of Mrs. Fuller's death.

 Appellants' fourth assignment of error is that

the trial court erred in overruling their objections to questions to plaintiff relative to who negotiated for the property. The contention here is that the testimony admitted in response to said questions "constituted privileged matter between husband and wife and forbidden by N. C. L. sec. 8971." Appellants specify eleven rulings claimed by them to be in violation of that part of said section which reads: "* * * nor can either (husband or wife), during the marriage or afterwards, be, without the consent of the other, examined as to any communication made by one to the other during marriage * * *." The first of said rulings was in favor of appellants. With regard to the other ten, the court has carefully examined each question, objection, ruling and answer, and is clearly of opinion that in no instance does it appear that the husband was examined as to any communication made to him by Mrs. Fuller during marriage. The mere fact that transactions testified to by plaintiff took place during the marriage is insufficient to show that his knowledge concerning them was derived, in whole or in part, from communications made to him by his wife.

■ Appellants further contend, in assignment of error No. V, that the trial court erred in overruling their objections as to who negotiated for the property, said objections being based on the following provisions of sec. 8966 N. C. L. 1929: "No person shall be allowed to testify: 1. When the other party to the transaction is dead. 2. When the opposite party to the action, or the person for whose immediate benefit the action or proceeding is prosecuted or defended, is the representative of a deceased person, when the facts to be proven transpired before the death of such deceased person." Here again, appellants specify eleven rulings to which they take exception. Of these at least seven are identical with those excepted to in assignment No. IV. One of the rulings was favorable to appellants and will not, therefore, be discussed here. With respect to the other ten, we will now summarize the testimony given by

plaintiff over defendants' objections based on sec. 8966
N. C. L. 1929.

(1) I negotiated for the property. (2) At the time the
property was purchased, I made a down payment of
$500 in cash and a Reo automobile. The $500 was my
money. I worked and saved it. (3) The value of the
Reo automobile was $600. (4) The Corrises were paid
in 1924. It seems to me it was in April or August.
(5) To pay the Corrises, we borrowed the money from
the Farmers & Merchants National Bank and gave the
bank a mortgage. (6) The money that paid off the
Farmers & Merchants National Bank was obtained from
the Home Owners Loan Corporation. (7) All the pay-
ments on the Farmers & Merchants National Bank
indebtedness came out of my wages. (8) The payments
of principal and interest to satisfy the Schoer mortgage
came out of my wages. (9) The money that paid off the
Home Owners Loan Corporation mortgage came out of
my wages. (10) The money to pay taxes on the prop-
erty since it was originally purchased on June 1, 1921,
came out of my wages.

Appellants rely on both "1" and "2" of said sec. 8966.
In the trial court, however, their objections under that
section were based on "1" only. In fact, counsel for both
appellants and respondent, in response to a question
from the trial judge, gave it as their opinion that in the
expression "representative of a deceased person," as
used in "2," the word "representative" means legal
representative, executor, or administrator. We do not
decide whether that view is correct; if it were, appel-
lants' objections based on "2" of sec. 8966 would be with-
out merit. What this court does hold is that defendants,
having, in the trial court, based their objections under
sec. 8966 on "1" only, cannot for the first time, on
appeal, rely also on "2" of that section.

The question we have to consider, therefore, in
connection with said assignment of error No. 5, is
whether appellants' objections in the trial court, based
on "1" of sec. 8966, were well taken. It is settled in this

state that the disqualifying provisions of sec. 8966 should be construed so as not to exclude testimony unless clearly inhibited by their terms.

■ It is clear from the statute itself that plaintiff was not disqualified to testify unless (1) the testimony related to a transaction or transactions between him and decedent, and (2) decedent was "the other party" to such transaction or transactions. The court is of opinion that none of the testimony complained of comes within the terms of said provision. Maitia v. Allied L. & L. S. Co., 49 Nev. 451, 248 P. 893; Taylor v. Jones, Tex. Civ. App., 135 S. W. 2d 767, 768; Wilhelm v. Pfinning, 191 Okl. 321, 129 P. 2d 580; 28 R. C. L. 497, n. 7; 70 C. J. 306, n. 92, 314, n. 24.

■ Under assignment of error No. VIII appellants contend that the trial court erred in overruling their objection to questions by plaintiff designed to show that no inventory of separate property had been filed by decedent in the office of the county recorder as required by sec. 3357, N. C. L., 1929. The effect of failure to file such inventory is set out in sec. 3359. By failing to file such inventory the wife does not forfeit her separate property, and may show that certain property is her separate estate by other evidence, notwithstanding such failure. However, we think that evidence of failure to file an inventory of her separate estate was properly admissible as one circumstance to be considered with all the other evidence, particularly with reference to the question of burden of proof. 41 C. J. S. Husband and Wife, sec. 232, p. 723, notes 40–44, sec. 469, p. 1000, note 42, sec. 493, p. 1055, notes 28, 29.

In view of what has been said regarding assignments of error Nos. III, IV, V and VIII, it is deemed unnecessary to discuss assignments of error VI and VII, and IX to XIV, both inclusive.

The judgment and order appealed from are affirmed.