EMIL P. TOLOTTI, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tolotti v. Commissioner
Docket No. 44477-85.
United States Tax Court
T.C. Memo 1987-13; 1987 Tax Ct. Memo LEXIS 13; 52 T.C.M. (CCH) 1331; T.C.M. (RIA) 87013; January 6, 1987. Emil P. Tolotti, Jr., pro se. A. Chris Zimmermann, for the respondent. COUVILLION
MEMORANDUM FINDINGS OF FACT AND OPINION COUVILLION, Special Trial Judge: This case was assigned pursuant to the provisions of section 7456(d) (redesignated as section 7443A(b) by the Tax Reform Act of 1986, Pub.L. 99-514, section 1556, 100 Stat.    ) of the Code [1] and Rules 180, 181, and 182. Respondent determined the following deficiency in petitioner's Federal income tax and additions to tax for the year 1981: Additions to Tax
Section
Section
Section
Deficiency
6651(a)
6653(a)(1)
6653(a)(2)
$2,815.00
$703.75
$140.75
*
After concessions by respondent, the remaining issues *16 are: (1) Whether Civil Service disability retirement payments of $13,584 are includable in petitioner's gross income and, if so, what is petitioner's share; (2) whether petitioner received nonemployee compensation of $1,000 in 1981 and, if so, what is petitioner's share; (3) whether petitioner is entitled to certain business deductions and, if so, his share; (4) whether petitioner's share of nonemployee compensation, if any, is subject to self-employment tax; and (5) whether petitioner is liable for the additions to tax.Petitioner also raised numerous tax protester arguments. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner was a resident of Reno, Nevada, when the petition was filed. Petitioner is a retired civil air technician for the Nevada Air National Guard (Guard), where he also served as a military flight instructor. Petitioner retired in March 1978, after 23 years of combined military and civilian service. Petitioner was married in December 1972 or 1973 and remained married through 1981. He and his wife had no children. Nevada is *17 a community property state. Since his retirement, petitioner has received Civil Service disability retirement payments (retirement payments) from the Office of Personnel Management. His disability arose when he became unable to maneuver the F-4 aircraft without becoming air sick. Petitioner no longer pilots aircraft in either a civilian or military capacity. During 1981, petitioner was a licensed real estate broker. His only transaction involved negotiating the rental of a sign, for which he received $1,000. Petitioner did not file tax returns for 1979, 1980, and 1981. OPINION We have considered all of petitioner's protester arguments and find them wholly without merit and not deserving of further discussion. Respondent's determinations in the notice of deficiency are presumed correct, and petitioner bears the burden of proving otherwise. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Respondent determined that petitioner's retirement payments of $13,584 in 1981 constituted taxable income. Petitioner argues that the payments are not taxable and, alternatively, that only one-half was taxable, since the payments constituted community income.
*18 For purposes of the income tax, gross income means all income from whatever source derived, including (but not limited to) pensions. Section 61(a)(11). Initially, petitioner argues that his retirement payments are a "source" of income and, relying on a perversion of the long-standing case Eisner v. Macomber,252 U.S. 189 (1920), suggests that respondent may not tax the source but only the "income" derived from the source. Such argument is specious. Section 61 encompasses all realized accessions to wealth. Commissioner v. Glenshaw Glass Co.,348 U.S. 426 (1955). See also Rowlee v. Commissioner,80 T.C. 1111, 1119-1122 (1983), and cases cited therein, and United States v. Romero,640 F.2d 1014 (9th Cir. 1981). The payments received were based on his 23 years of service with the Nevada Air National Guard and, despite his misconception to the contrary, are clearly income derived from his labor. The disability payments, therefore, are includable in petitioner's gross income unless he is within some other provision of the Code which excludes such payments from income. It is not clear from the record whether petitioner *19 is relying on section 104(a)(4) or section 105(d) to exclude these payments. Section 104(a)(4) provides that gross income does not include "amounts received as a pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed forces of any country * * *." Petitioner argues that section 104(a)(4) applies because his disability is service-related. This argument was rejected in Haar v. Commissioner,78 T.C. 864, 866-867 (1982), affd. per curiam 709 F.2d 1206 (8th Cir. 1983), which concluded that payments made under the Civil Service Retirement Act, 5 U.S.C. section 8331, et seq. (1982), are not paid for personal injuries or sickness incurred in active service. The term "disability" in this context is defined as total disability for useful and efficient service in the grade or class of position last occupied by the employee, because of disease or injury. The focus is merely on the ability of the employee to perform his or her job., no consideration is given to whether the disease or injury arose as a result of military service. As in Haar v. Commissioner,supra, *20 we concluded that section 104(a)(4) does not apply to exclude these payments from petitioner's gross income. Section 105(d) excludes from gross income certain disability payments received by taxpayers who have not reached age 65 before the close of the taxable year and who have retired on permanent and total disability. In order to claim the exclusion, married couples who have not lived apart at all times during the taxable year must file a joint return to claim the exclusion. Section 105(d)(5)(A). Petitioner did not file any return for 1981, and the exclusion is, therefore, not available to him. [2]
Petitioner also claims that Title 45 U.S.C. section 231m(a) (1984) exempts his retirement payments from taxation. That section provides: (a) Except as provided in * * * the Internal Revenue Code of 1954, * * * notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject *21 to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated Petitioner contends that, because of the phrase "notwithstanding any other law of the United States," his retirement payments are not taxable. The fallacy of this argument is that it overlooks the preceding phrase in this section, which specifically states that the "notwithstanding" phrase does not apply to the Internal Revenue Code. Petitioner also argues, without citing authority, that, had he received disability payments through the Veterans Administration (VA), they would not have been taxable. Without addressing the merits of petitioner's argument, we simply note that his payments were made by the Office of Personnel Management, not the VA. The taxability of benefits which might have been received through the VA is not germane to the present case. Petitioner's final argument is that respondent dropped a criminal investigation with respect to his 1979 and 1980 tax years. Rather than being merely thankful, petitioner erroneously interpreted respondent's actions as some sort of tacit agreement that his retirement payments did *22 not constitute taxable income. The fact that respondent declined to proceed against petitioner criminally with respect to prior years, however, has no bearing on this case. It is well settled that prior administrative determinations which involved the same or related taxpayer do not preclude respondent from making a contrary determination for a different year. Coors v. Commissioner,60 T.C. 368, 406 (1973). Moreover, respondent is not estopped from asserting a position, even though respondent failed to object to similar circumstances in prior years. Easter v. Commissioner,338 F.2d 968 (4th Cir. 1964), affg. per curiam a Memorandum Opinion of this Court. With respect to petitioner's contention that his 1981 income was community property and, therefore, only one-half was attributable to him, Nevada Revised Statutes (NRS) section 123.220 (1983) provides, with exceptions not applicable here: All property * * * acquired after marriage by either husband or wife, or both, is community property unless otherwise provided by: 1. An agreement in writing between the spouses, which is effective only as between them, 2. A *23 decree of separate maintenance issued by a court of competent jurisdiction, 3. * * * The presumption that all property acquired after marriage is considered to be community property may be overcome only by clear and convincing evidence. Forrest v. Forrest,99 Nev. 602, 668 P.2d 275 (1983); Peters v. Peters,92 Nev. 687, 557 P.2d 713 (1976); Burdick v. Pope,90 Nev. 28, 518 P.2d 146 (1974); Jones v. Edwards,49 Nev. 299, 245 P. 292 (1926); Milisich v. Hillhouse,48 Nev. 166, 228 P. 307 (1924). Respondent argues on brief that only the portion of petitioner's retirement payments earned while petitioner was married was community property. [3] Petitioner argues that his marital status during the year of receipt determined whether the payments were community property. For the reasons set forth below, we agree with respondent. *24 It is now beyond peradventure that Civil Service retirement benefits are subject to state community property laws. See McCarty v. McCarty,453 U.S. 210, 230-231 (1981). Although Nevada Courts have not specifically ruled whether Civil Service retirement payments are community property, they have stated that "generally, retirement benefits are divisible as community property to the extent that they are based on services performed during the marriage, whether or not the benefits are presently payable." Forrest v. Forrest,99 Nev. 602, 668 P.2d 275, 279 (1983). See also Duke v. Duke,98 Nev. 148, 643 P.2d 1205 (1982) (pre-McCarty case awarding 35% of husband's Air Force retirement pay to wife as her share of community property; McCarty not applied retroactively). We find that Nevada courts would probably treat as community property that portion of petitioner's retirement payments which are based on services performed during the marriage. Our decision is bolstered by the fact that other courts considering this issue have held as such. See Cowan v. Plsek,592 S.W.2d 422 (Tex. Civ. App. 1979); Heisterberg v. Standridge,656 S.W.2d 138 (Tex. App. 1983); *25 Barbour v. Barbour,464 A.2d 915 (D.C. App. 1983). Petitioner was unable to remember whether he married in December 1972 or 1973. Respondent determined December 1973 as the month of petitioner's marriage and, in the absence of any evidence to the contrary, this determination stands. Therefore, respondent's computation of $12,329 stands and that amount is includable in petitioner's 1981 gross income. Petitioner acknowledged he received $1,000 in 1981 as a commission for the lease of an advertising sign. He did not seriously deny that this amount was includable in income, but contended that only one-half was attributable to him by virtue of NRS section 123.220, supra. We agree and find that $500 was attributable to him as income. Petitioner argues he incurred deductible business expenses in 1981. The parties stipulated that petitioner expended certain amounts in 1981 but did not stipulate that the items were allowable business deductions. [4]
*26 Section 162 allows a deduction for the ordinary and necessary expenses paid or incurred curing the taxable year in carrying on a trade or business. Personal expenditures, however, are not deductible. Section 262. The burden of proof is on petitioner to prove that the expenditures in question are deductible business expenses. Welch v. Helvering,supra; Rule 142(a). Petitioner did not present any evidence to establish that the expenditures for utilities, postage, automobile expense CSAA, Nevada Industrial Comm., magazine subscription, or payroll deduction payments to daughter were ordinary or necessary or were made in the carrying on of a trade or business. Accordingly, these expenses are not allowed. With respect to the largest single item, insurance ($900), petitioner testified that this was for automobile insurance. He offered no evidence, however, as to whether the vehicle or vehicles insured were used solely in his trade or business of being a realtor or, if not, any basis for allocating the expense among business and personal use. As such, we are unable to apply the rule of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), and *27 the deduction is denied. See also Williams v. United States,245 F.2d 559, 560 (5th Cir. 1957). Similarly, with respect to telephone expense ($394), petitioner offered no evidence from which we could estimate business usage; this deduction is also denied. With respect to $550 to the Board of Realtors, petitioner testified that the payment was for Board of Realtor dues and a multiple listing service. We find this payment was a deductible expense incurred by petitioner in connection with his real estate activity. Petitioner's share of this expense is $275. With respect to self-employment tax, respondent argued that petitioner was liable for self-employment tax on the gross income derived from his activities as a realtor. We disagree. With certain exceptions not relevant here, the term "self-employment income" means the net earnings from self-employment derived by an individual during any taxable year. Section 1402(b). In computing "net earnings from self-employment," if the income derived from a trade or business, other than one carried on by a partnership, is community property, all of the gross income and deductions attributable to such trade or business *28 shall be treated as attributable to the party exercising substantially all of the management and control of such trade or business. Section 1402(a)(5). The term "management and control" means actual management and control rather than that imputed under community property laws. Section 1.1402(a)-8(a), Income Tax Regs. Thus, only the spouse carrying on the business activities is subject to self-employment tax, computed on the total gross income less total business deductions, not withstanding the attribution of one-half to the other spouse for income tax purposes. Heidig v. Commissioner,T.C. Memo. 1986-411. Petitioner's net earnings from self-employment for 1981 are $450 ($1,000 gross income less $550 deductions), and he is subject to self-employment tax liability on that amount. Section 6651(a) provides for an addition to tax for failure to file a return unless such failure is due to reasonable cause and not due to willful neglect. Section 6651(a)(1). Petitioner argues that he was not required to file a return for a variety of reasons, all of which have been rejected. The fact that he filed returns in prior years indicates he was aware of his responsibility *29 to file. His failure to file a 1981 Federal income tax return was not due to reasonable cause and was, in fact, due to willful neglect. This addition to tax is sustained. The addition to tax under section 6653(a)(1) applies if any part of an underpayment of income tax is due to negligence or intentional disregard of rules or regulations (without intent to defraud). Based on the record, we conclude that a portion of the underpayment of tax was due to negligence or intentional disregard of the rules and regulations. Petitioner's tax protester arguments notwithstanding, he was certainly aware, or should have been aware, that at least some portion of his retirement payments and other income received as a result of his activities as a realtor was taxable in the year of receipt. His failure to properly return such income and pay tax is clearly evidence of intentional disregard of rules and regulations. This addition to tax is sustained. Section 6653(a)(2) imposes an addition to tax with respect to the portion of any underpayment attributable to negligence or intentional disregard of rules or regulations. Because petitioner presented a colorable claim with respect to certain legitimate *30 business deductions, we find that his failure to pay self-employment tax was not due to negligence or intentional disregard of the rules or regulations. However, we find that petitioner's failure to report at least one-half of his retirement payments ($6,792) was due to negligence or intentional disregard of the rules or regulations. The addition to tax under section 6653(a)(2) is, therefore, sustained only with respect to this amount. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50** of the interest due on $2,815.00.↩
2. Since petitioner did not file a joint return as required by statute, we need not address whether he was permanently and totally disabled under section 105(d)(4).↩
3. Of the $13,584 retirement payments received by petitioner during 1981, respondent determined $2,510 was community property, and $11,074 was petitioner's separate property. This was based upon respondent's determination that, of the total 276 months of service in which petitioner was employed, he was married 51 months during this period. Therefore, 51/276 of $13,584, or $2,510, constituted community income. One-half of this amount, or $1,255, was attributable to petitioner, along with the remaining $11,074, thus totaling $12,329 as income attributable to petitioner.↩
4. The parties stipulated that petitioner made the following payments during 1981: ↩
(a) Board of Realtors
$550.00
(b) Phone payments
$394.00
(c) Utilities
$ 90.00
(d) Postage
$ 20.00
(e) Automobile expense CSAA
$ 35.00
(f) Insurance
$900.00
(g) Nevada Industrial Comm.
$ 76.00
(h) Magazine subscription
$143.00
(i) Payroll deduction payments to daughter
$ 59.00