[Civ. No. 11873.  First Dist., Div. Two.  Dec. 22, 1941.]

JOHN W. HORSMAN et al., Executors, etc., Appellants, v.
MARCELLA MADEN, Respondent.

Peter tum Suden and Richard tum Suden for Appellants.

Williamson & Wallace for Respondent.

SPENCE, J.—Plaintiffs, as executors of the last will of Emile Maden, deceased, brought this action against defendant, the widow of said deceased, seeking to quiet title to certain real and personal property and to obtain an accounting with respect to such of the property as had been disposed of by defendant. The cause was tried by the court sitting without a jury and, at the close of plaintiffs' case, the court granted defendant's motion for a nonsuit and entered a judgment of dismissal. Plaintiffs appeal from said judgment.

The controversy involved the issue of whether the property in question was the community property of Mr. and Mrs. Maden or the separate property of Mrs. Maden at the

time of the death of Mr. Maden in 1939. The complaint alleged that the property was acquired as community property and that it remained community property at all times. The answer admitted that practically all of the property was acquired as community property but alleged that such property became the separate property of defendant by reason of certain transfers.

It appears from the evidence that Mr. and Mrs. Maden were married in 1914 and that certain real property together with certain stocks and bonds were acquired as community property during their married life. Some of the property was acquired in the name of Mr. Maden while other property was acquired in the names of both Mr. and Mrs. Maden. Said parties kept their securities in a joint safe deposit box and they also kept funds in joint bank accounts.

In the latter part of 1933, domestic difficulties arose after Mr. Maden had become interested in another woman. Mrs. Maden removed said securities from said joint safe deposit box and retained them in a safe deposit box of her own. She also withdrew all funds in the joint bank accounts amounting to approximately $8500. She left a note in the joint safe deposit box reading "Dearest Emile: I am taking charge of our possessions as I want to save you from yourself. Remember I love you dearly and know that I will always be your best friend. Marcella."

Thereafter the parties attempted a reconciliation and took a three months cruise to the Orient. Mrs. Maden retained possession of the securities. No permanent reconciliation resulted and, after their return from the Orient, the parties separated. Disputes arose over the matter of the support of Mrs. Maden. Apparently the dividends on the stocks were being sent to Mr. Maden and it was Mrs. Maden's desire to have the stocks transferred into her name in order that she would receive the dividends directly. Mrs. Maden testified that she requested such transfer as a matter of precaution for both herself and Mr. Maden. Mrs. Maden threatened to bring suit and to create a scandal unless the securities were so transferred. In October 1934, Mr. Maden met his wife at the bank, endorsed the securities and permitted her to retain them. He also agreed to give Mrs. Maden $100 per month from his salary. In 1935, he also executed and de-

livered to her a deed to their home, title to which had previously stood in both their names, but he told her not to record said deed. Mrs. Maden did record the deed in 1937, however, and she testified she did so because she "thought it was better business to record it." The parties were never divorced and Mr. Maden made a will shortly before his death declaring all of said property to be community property and purporting to dispose of it as such.

Upon the trial, it was the theory of plaintiffs that there had been no intention upon the part of Mr. Maden to make a gift or to change the status of said property to separate property of Mrs. Maden and that said property therefore remained the community property of the spouses at the time of Mr. Maden's death. It was the theory of defendant that said transfers constituted executed gifts to Mrs. Maden and that said property was her separate property at all times after said transfers had been made. It appears that there was no written agreement between the parties concerning the status of said property and that there was no recital in any of the transfers stating that the property was transferred to Mrs. Maden as her separate property.

In support of their case, plaintiffs called several witnesses including Mrs. Maden, who was called under section 2055 of the Code of Civil Procedure. Plaintiffs endeavored to show by the declarations of Mr. Maden, made both before and after the transfers, that Mr. Maden had no intention to make a gift or to change the status of said property to the separate property of Mrs. Maden and that Mr. Maden had always treated the property as community property. Objection was made to the introduction of such evidence and practically all evidence of said declarations was excluded by the trial court. Some evidence covering such declarations was stricken out upon motion. Repeated offers were made and repeated objections were sustained. The view of the trial court was expressed as follows: "Here the question of intent on the part of the donor is not involved on the trial of this case at all." And finally the trial court said, "There is no use talking any further, counsel. This is a point where we have to stop. There will be no further testimony of any kind, oral or in the form of written declarations by the deceased, conveyed to this witness or anybody else, relative to

the conversations occurring after the transactions with his wife.''

On this appeal, plaintiffs contend that the trial court erred in granting the motion for nonsuit and that the trial court committed prejudicial error in its rulings excluding evidence of the declarations of the deceased which tended to show that he had no intention of making a gift to defendant or of changing the status of the property to separate property of defendant. In our opinion, both of these contentions must be sustained.

The rules governing the determination of the motion for nonsuit are too well settled to require elaboration here. (9 Cal. Jur. 551, sec. 35 *et seq.*)    Accepting as true the evidence most favorable to plaintiffs and disregarding conflicts, we are of the view that plaintiffs produced sufficient evidence to require the denial of said motion.   Despite the rulings refusing admission to certain evidence, some of the evidence given by defendant herself together with evidence given by other witnesses was sufficient to show that there was no intention on the part of the deceased to make a gift to defendant or to change the status of the property; that the transfers were requested by defendant for the protection of both parties; and that the deceased made the transfers after expressing his trust in the defendant and his faith that defendant would respect his interest in the property.

We believe that the error in granting the motion for nonsuit may have been caused in part through the presence of a certain allegation in one of the counts of the complaint. It was alleged in the first count of the complaint, which count related to the securities, that said securities were at all times, including the time of the death of the deceased, the community property of the deceased and the defendant. But it was also alleged that, at the time of the transfer of said securities into the name of defendant, there was an oral agreement between the spouses that said securities should remain the community property of the spouses.   Under the authorities hereinafter cited, the last mentioned allegation may be treated as surplusage.   The allegation that the property was at all times the community property of the spouses was the allegation of the ultimate fact and the proof of that fact required only a showing that there was no intention

on the part of the deceased to make a gift to defendant or to change the status of said community property to the separate property of defendant. Upon the trial, defendant testified that no oral agreement was made as alleged. Plaintiffs were deprived of the testimony of deceased because of his death. It appears probable from a reading of some portions of the record that the trial court was of the view that the failure to prove an express oral agreement, as alleged in said first count, was fatal to plaintiffs' case. Again, the error may have arisen from the apparent belief of the trial court that it was acting as though the entire case had been submitted to it and that it was determining a question of fact rather than of law. In making its ruling the trial court said, "I am not necessarily deciding this matter on the technical theory that the plaintiffs have failed to make out a *prima facie* case. . . . " And further, "I am entitled to judge of evidence and its weight and value from the impressions made by witnesses. It is my duty to scrutinize the witnesses and determine from my conception of them what I see and hear from their lips, and judge their actions and appearance, the quality of the testimony they are offering."

But in any event the error of the trial court in ruling upon the admissibility of evidence would require a reversal of the judgment. We are dealing here with a situation in which the property in question was admittedly acquired with community funds and in which it is claimed by defendant that said property became the separate property of defendant by virtue of executed gifts by the deceased. While there is a presumption that any property acquired by the defendant by an instrument in writing became her separate property (Civil Code, section 164), such presumption is not conclusive between the parties but is disputable. (*Salveter* v. *Salveter*, 206 Cal. 657 [275 Pac. 801]; *Estate of Bruggemeyer*, 115 Cal. App. 525 [2 Pac. (2d) 534].)

Property may be regarded as community property regardless of whether the record title stands in the name of the husband or of the wife or in the names of both the husband and the wife, and the courts are invested with full power to determine the status of any such property. (*Salveter* v. *Salveter*, *supra*; *Jansen* v. *Jansen*, 127 Cal. App. 294 [15 Pac. (2d) 777].) And where it is claimed that an instrument in writing, executed by the husband to

the wife, constituted a gift to the wife and changed the status of community property to that of separate property of the wife, the question of the intention of the husband in executing such instrument becomes "the all-important and controlling question." (*Ruiz* v. *Dow,* 113 Cal. 490 [45 Pac. 867] ; see also *Fanning* v. *Green,* 156 Cal. 279 [104 Pac. 308] ; *Estate of Bruggemeyer, supra.*) ■ In determining this question of intention, the declarations of the alleged donor, made either before or after the transfer, are admissible and such declarations need not have been made in the presence of the adverse party. (*Ruiz* v. *Dow, supra; Estate of Hall,* 154 Cal. 527 [98 Pac. 269] ; *O'Dea* v. *Hibernia Savings & Loan Society,* 119 Cal. App. 622 [7 Pac. (2d) 318] ; *Estate of Carson,* 184 Cal. 437 [194 Pac. 5, 17 A. L. R. 239].) These last mentioned authorities demonstrate the error of the trial court in excluding evidence of such declarations and our review of the record convinces us that such error was prejudicial to plaintiffs.

■ The only authorities cited by respondent which come reasonably close to approaching the problem presented here are *Miller* v. *Brode,* 186 Cal. 409 [199 Pac. 531], and *Dale* v. *Dale,* 87 Cal. App. 359 [262 Pac. 339]. These cited cases are clearly distinguishable, however, as each of the instruments involved in said cases expressly recited that the property was conveyed to the wife as her separate property. We may further state that respondent's brief is based upon the premise that "the only issue in the case" was "whether or not there was an express oral agreement at the time of the transfer." As above stated, we do not believe that the allegation, found in one count of the complaint, that there was an oral agreement between the spouses at the time of the transfer was an essential allegation under the authorities hereinbefore cited. Proof that there was no intention on the part of the husband to make a gift or to change the status of the property was all that would have been required to sustain a finding, in conformity with the allegations of the complaint, that the property was at all times the community property of the spouses. Proof that there was an oral agreement at the time of the transfer would have been helpful to plaintiffs but it was not essential to make out their case. The allegation relating to the existence of such oral agreement

should therefore have been treated as surplusage and the mere absence of evidence to prove such oral agreement did not justify the granting of the motion for nonsuit.

It is probably unnecessary but we deem it appropriate to state that this court should not be understood as indicating any view with respect to the ultimate determination of the issues of fact which may be presented in this controversy. The only questions before us on this appeal are the questions of law above discussed.

The judgment is reversed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing was denied January 21, 1942.