[Civ. No. 12102.   First Dist., Div. Two.   May 13, 1942.]

MARY A. WILLIAMSON, as Executrix, etc., Appellant, v.
FRANCES DAVIS KINNEY, Respondent.

T. L. Chamberlain and Gerald Beatty Wallace for Appellant.

F. H. Bowers for Respondent.

DOOLING, J. pro tem.—This is a suit by the executrix of the last will of Agnes Kinney, deceased, against the distributee of certain property from the estate of L. J. Kinney, deceased, to cancel certain deeds from Agnes Kinney and to quiet title in the plaintiff, as such executrix, to the real property described in such deeds. Defendant answered and filed a cross-complaint seeking to quiet title in herself. From a judgment for defendant and cross-complainant quieting her title plaintiff prosecutes this appeal.

L. J. Kinney and Agnes Kinney were married in California in 1892 and continuously thereafter lived together in this state as husband and wife until June 25, 1930, when Agnes Kinney died. Her husband, L. J. Kinney, survived her and in his turn died on September 5, 1936. On March 10, 1909, the real property here in suit was acquired by deed naming L. J. Kinney as grantee. From that time until the death of the wife in 1930 the Kinneys resided on said property and made it their home. At the time the property was originally acquired in 1909 it was admittedly community property.

On January 22, 1915, L. J. Kinney executed and delivered a deed of the property to Agnes Kinney, his wife. On July 18, 1923, Agnes Kinney executed a deed of the same property to one Brennan and on the same day and as a part of the same transaction Brennan deeded the property to L. J. Kinney and Agnes Kinney. On April 24, 1928, Agnes Kinney executed a deed of the property to L. J. Kinney which was not recorded until January 11, 1932.

Plaintiff introduced the deeds constituting the record title commencing with the deed to Mrs. Kinney in 1915 and rested, relying on the presumption that by the deed to Mrs. Kinney in 1915 the property became her separate property (§ 164, Civ. Code) and the further presumption that her deeds of 1923 and 1928 were obtained by the husband without consideration and under undue influence. (§§ 158 and 2235, Civ. Code.)

To rebut these presumptions defendant introduced evidence establishing the community character of the property at the time of its original acquisition in 1909; evidence showing that at the time of the deed to Mrs. Kinney in 1915 Mr. Kinney was liable as guarantor on a lease in Sacramento in a sum aggregating possibly $15,000, and that Mr. and Mrs. Kinney had discussed that fact in front of the witness Brennan and Mr. Kinney had agreed to convey the property to Mrs. Kinney "to protect her home"; that prior to the deed to Brennan in 1923 the Sacramento liability had been satisfactorily worked out and terminated; and that L. J. Kinney at all times from the date of the acquisition of the property (which was a fruit orchard) to his death had managed and operated it and sold the fruit to the exclusion of his wife.

Specifically Brennan testified as to the 1915 transaction:

"Q. Did you understand from the conversation that you had with them at that time . . . that he was giving the property to her, turning it over to her, was he deeding it to her for the benefit of the community or the two of them?

"A. I won't answer that question."

Concerning his conversations with Mr. and Mrs. Kinney at the time of the 1923 transaction Brennan testified:

"Mr. and Mrs. Kinney met me about this time and told me that they wanted to straighten out that property matter, and asked me if they would deed the property to me, if I would re-deed it to them in (sic) jointly, and Mrs. Kinney did deed the property to me and I did deed it to Mr. and Mrs. Kinney. . . .

"Q. Was anything said with relation to the 1915 transaction at that time . . . at the time of these deeds—

"A. Simply referring to the matter, was all squared out now, the 1915 matter. . . .

"Q. . . . What did she say?

"A. That she wanted to put the property back as it originally was in Kinney's and her name."

The court found that the property retained its character of community property throughout these several transactions.

It is obvious that there was no testimony expressly showing the intention of the parties as to whether the property should retain its character as community property or become the separate property of Mrs. Kinney as a result of the deed to her in 1915. It is appellant's position that there is no evidence in the record to contradict the presumption created by section 164 of the Civil Code that by this conveyance the property became the separate property of Mrs. Kinney. ■ But the intention of the parties can be shown by circumstantial, as well as direct, evidence and the inferences to be drawn from the evidence are for the trier of the facts to determine so long as those inferences find reasonable support in the evidence given. ■ The statements of the parties to the witness Brennan in 1923 that ''they wanted to straighten out that property matter,'' that the 1915 matter ''was all squared out now'' and that Mrs. Kinney ''wanted to put the property back as it originally was,'' coupled with the other evidence before the court, were sufficient to support the findings that by the deed to Mrs. Kinney in 1915 and the later deeds of 1923 it was not intended by the parties to change the community character of the property conveyed. ■ The determination of the trial court that the presumption raised by section 164 of the Civil Code, that property conveyed to the wife is her separate property, has been rebutted is conclusive on an appellate court unless it is manifestly without sufficient support in the evidence. (*Fanning* v. *Green,* 156 Cal. 279, 282 [104 Pac. 308]; *Fulkerson* v. *Stiles,* 156 Cal. 703 [105 Pac. 966, 26 L. R. A. (N. S.) 181]; *Hammond* v. *McCollough,* 159 Cal. 639 [115 Pac. 216]; *Killian* v. *Killian,* 10 Cal. App. 312 [101 Pac. 806]; *Estate of Kelpsch,* 203 Cal. 613 [265 Pac. 214]; *Estate of Cronvall,* 220 Cal. 503 [31 P. (2d) 372].) ■ In this connection it may be noted that while the continued and exclusive management of the property by the husband standing alone might not be sufficient to overcome the presumption (*Alexander* v. *Bosworth,* 26 Cal. App. 589 [147 Pac. 607]) taken in connection with the other evidence tending to show the community character of the property it is entitled to some weight. (*Hammond* v. *McCollough, supra,* pp. 642, 643.)

■ The court was also entitled to consider the situation of the parties in 1915 and the motive for the conveyance to Mrs. Kinney. ■ Herein appellant argues that the deed was in-

tended as a fraud on the Sacramento creditor and the "clean hands" doctrine precludes defendant from asserting that the conveyance to Mrs. Kinney was to secure the property against liability for the husband's debts. While this might be true if the property had not been reconveyed, the settled rule is otherwise where there has been a voluntary reconveyance to the fraudulent grantor. "While a fraudulent grantee is under no legal obligation to reconvey, it is said that he is under a moral obligation to do so, and all subsequent acts done by him in execution of this duty should be favorably considered in equity, the moral obligation being a valuable and sufficient consideration for a reconveyance. If in fulfillment of his moral obligation he makes a reconveyance, such act will be binding on him, and if the rights of no innocent third person have intervened, the fraudulent grantor will become revested both in law and in equity with the title previously conveyed to his grantee; and the grantee will be estopped from thereafter setting up any claim to the property." (27 C. J. 658; 24 Am. Jur. 296; 89 A. L. R. 1166, note collecting the cases.)

█ The court having found that the property remained the community property of the parties after the 1915 conveyance, the transfer in 1923 through Brennan to Mr. and Mrs. Kinney, which the court found did not change the community character of the property, was not subject to the presumption of lack of consideration or undue influence. Though the record title changed, the actual interests of the parties remained the same throughout its various mutations. It at all times remained the community property of the parties.

█ The effect of the 1928 deed need not be inquired into. The community property having been originally acquired in 1909, Mrs. Kinney was powerless to dispose of it by will (3 Cal. Jur. 10-Yr. Supp. 705, 706) and since she predeceased her husband the full title vested in him at the date of her death in any event. (*McKay* v. *Lauriston*, 204 Cal. 557 [269 Pac. 519].)

The reception of opinion evidence that Mrs. Kinney did not appear to be acting under undue influence at the times of the 1923 and 1928 conveyances becomes immaterial in view of the finding of the court that the property at the time of the conveyance to Mrs. Kinney in 1915 and at all times thereafter retained its status as community property.

█ The evidence of the conversations of the parties at the times of the 1915 and 1923 transactions was properly admitted

under Code of Civil Procedure, section 1850, which reads: "Where, also, the declaration, act, or omission forms a part of a transaction, which is itself the fact in dispute, or evidence of that fact, such declaration, act, or omission, is evidence, as part of the transaction." (*Sethman* v. *Bulkley*, 9 Cal. (2d) 21, 24 [68 P. (2d) 961]; *Rodriguez* v. *Rodriguez*, 69 Cal. App. 399, 402 [231 Pac. 375]; *Lewis* v. *Burns*, 106 Cal. 381, 384 [39 Pac. 778].)

The parties devote a portion of their briefs to a discussion of whether defendant sufficiently pleaded that after the conveyance to her in 1915 Mrs. Kinney held the property "in trust for the community." The pleading of a trust for the community, and the argument thereon, both result from a misconception of the law of community property. Property acquired during their marriage in the name of either the husband or the wife, or in the names of both, may be community property. There is no question of holding in trust, but rather a question of the nature of the estate or tenure. The matter is fully discussed and the earlier cases reviewed in *Mitchell* v. *Moses*, 16 Cal. App. 594 [117 Pac. 685]. The court in that case summarizes the applicable rule of law in one sentence on page 598: "The title to property may be vested in the marital community by a conveyance to either spouse." The court concludes on page 600: "It is only where the deed expressly conveys the property to the wife 'as her separate property' that it may be said that she takes the legal title in trust for the community, where the consideration is paid from community funds. . . . In the case at bar the conveyance was not in terms to the wife as her separate property, but was in the usual form of a grant, bargain and sale deed." In the case before us the deed of 1915 to Mrs. Kinney was likewise not in terms to her "as her separate property." (cf. the later cases of *Salveter* v. *Salveter*, 206 Cal. 657, 660 [275 Pac. 801]; *Siberell* v. *Siberell*, 214 Cal. 767, 770 [7 P. (2d) 1003]; *Caputo* v. *Fusco*, 54 Cal. App. 191 [201 Pac. 604].)

The judgment appealed from is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.