[Civ: No. 15896. Second Dist., Div. One. Oct. 16, 1947.]

Estate of IRENE B. BAER, Deceased. REGINALD W. BAER, as Administrator, etc., Respondent, v. IRA BEG-LEY et al., Appellants.

Ogden, Crocker & Steelman for Appellants.

Benjamin P. Riskin for Respondent.

WHITE, J.—The appellants herein are the parents of the decedent, Irene B. Baer. The respondent, Reginald W. Baer, is the surviving husband of decedent and administrator of her estate. In his first and final account and petition for distribution respondent alleged that all of the property of the estate was community property of respondent and his deceased wife and prayed for distribution of the entire estate to him. He also sought credit for certain funeral expenses paid by him and for one-half of an alleged joint liability of decedent and respondent on two promissory notes. Appellants objected to the account and petition on the ground that the property of the estate was separate property of the wife, of which appellants should receive one-half. They also objected to the allowance of credit for funeral expenses and for the liability on the promissory notes, and further charged that certain other separate property of decedent had not been accounted for. The trial court sustained the account in all particulars and found that all the assets of the estate, with the exception of one small item not here in controversy, constituted community property. From the decree approving the account and directing distribution of all the estate (except one-half the one item above mentioned) to the respondent husband, the present appeal is prosecuted.

The property here involved consists of corporate stock, the certificates of which stood in the name of the wife alone at the time of her death. It appears that at the time of her marriage to respondent, in 1936, the decedent, Irene B. Baer, had no substantial estate of her own, while the husband's estate at that time approximated $27,000. Shortly after the marriage a private checking account was established in the name of the

wife. This account was closed in March, 1943, and thereafter the husband and wife maintained a joint account. Over a period extending from 1939 through 1941, the decedent, through her own efforts and with the assistance of her sister and brother-in-law, acquired approximately $5,800 as her share of prize-money won in certain puzzle contests then being conducted by a Los Angeles newspaper. These funds went into her separate checking account and also in a separate savings account in her name. The husband exercised no control over these accounts and allowed his wife to use the funds therein as she saw fit. In the fall of 1941, an account was opened in the name of the wife with a stock brokerage firm with which the husband also maintained an account. The record of the wife's account showed 25 purchases of stock between November, 1941, and May, 1944. At the time of her death in May, 1945, there stood in the name of the wife alone certificates representing seven different issues of stock. The present controversy centers about whether such stocks were the separate property of the decedent or community property of decedent and her husband, respondent herein.

It is urged by appellants that the trial court should have found these stocks to be separate property of the deceased wife, for the following reasons:

"A. The source of said stocks was the separate property of the decedent.

"B. The said stocks were all in the name of the decedent, with the knowledge and consent of respondent.

"C. The course of conduct of the respondent establishes said property to be separate."

Under point "A" appellants argue that the testimony discloses that respondent husband, by his acts and conduct, indicated that he did not regard the earnings, or winnings, of the wife as community property, but relinquished to his wife the right thereto (*Pacific Mutual Life Ins. Co.* v. *Cleverdon,* 16 Cal.2d 788, 789, 791 [108 P.2d 405]), and that such separate funds were the source of the stocks standing in decedent's name at the time of her death. Under point "B" appellants rely upon the presumption (Civ. Code, § 164) that "whenever any real or personal property . . . is acquired by a married woman by an instrument in writing, the presumption is that the same is her separate property." Under point "C" it is urged that the entire conduct of the parties strengthens the presumption that the stock was the separate property of the

wife; and appellants further point out that the wife's stock represented a very small amount in comparison with the holdings of her husband in his own name and that the real property of the parties was held in joint tenancy.

In considering the contentions presented upon this appeal, it should be first noted that the finding of the trier of fact that property is separate or community, if based upon substantial evidence, even though there be evidence in conflict therewith, or if based upon evidence from which conflicting inferences may be drawn, is binding and conclusive upon an appellate court. "The sufficiency of the evidence is generally a matter for the trial court or jury, and the findings or verdict will not be lightly set aside. Following the general rule, a finding of a trial court that property is either separate or community in character is binding and conclusive upon the appellate court, if it is supported by sufficient evidence, or if it is based on conflicting evidence or upon evidence that is subject to different inferences. (3 Cal.Jur.Supp. 573.) Further, a finding against a presumption is binding upon the appellate court (*Estate of Cronvall*, 220 Cal. 503 [31 P.2d 372]), unless the evidence to rebut it is so weak and improbable that the finding is without substantial support. (*Olson* v. *Cornwell*, 134 Cal.App. 419 [25 P.2d 879].) It is finally in each case a question of fact for the court or jury to determine whether the evidence is sufficient to overcome the presumption. . . ." (*Estate of Trelut*, 26 Cal.App.2d 717, 723 [80 P.2d 147].)

A determination by a trial court that the presumption raised by section 164 of the Civil Code (that property conveyed to the wife is her separate property) has been rebutted is conclusive upon an appellate court unless it is manifestly without sufficient support in the evidence. (*Williamson* v. *Kinney*, 52 Cal.App.2d 98, 102 [125 P.2d 920], and cases therein cited.) The language used in *Estate of Walsh*, 66 Cal.App.2d 704, 707 [152 P.2d 750], is here pertinent: "In order to prevail on this appeal appellant must show not only that the evidence would support a finding that the property is separate, but must also show that it compels, as a matter of law, such finding—in other words, that the finding that it is community property is totally unsupported." It may be conceded that there was before the trial court ample evidence from which it could have found in favor of appellants. But before we can set aside the finding of the trier of fact upon the issue here presented, there

must appear to be an entire failure of any substantial evidence to support such finding. (*Estate of Duncan,* 9 Cal.2d 207 [70 P.2d 174].)

Proceeding to a further consideration of the evidence, respondent husband testified that when they were first married he gave his wife a private checking account; that to the best of his knowledge she deposited her winnings in this account or in her own savings account; that he never asked her to turn the money over to him. He further testified: "Q. You knew that she had the money under her control? A. I don't know whether it was there, or whether she had it in my bank, but I will tell you this: We added some money to it and we bought securities with most of it and she might have bought some wearing apparel out of it, so far as that is concerned. I don't know." "Q. As far as you are concerned you exercised no control over those funds; is that correct? A. Not as far as demanding any; none whatever. . . . Q. And isn't it a fact that all of this money in this bank account in the name of Irene B. Baer was understood by the two of you to be her own money? A. We did not consider it that at all. . . . Q. As far as she was concerned, she could do anything with that bank account? A. She could spend it as she saw fit." The husband denied that he had ever told his wife, as testified to by other witnesses, that her puzzle winnings were to be her separate property.

With reference to the establishment of the stock brokerage account, the husband testified that the purchases and sales were handled by him; that he would present certificates to his wife for indorsement or would secure from her a power of attorney; that dividends received would be deposited in their joint account or used for current cash. In response to the question, "Mr. Baer, with the exception of the 100 shares of Equity Corporation of America, did you or did you not intend, by having the securities taken out in the name of Mrs. Baer, that they became her separate property?" Respondent testified, "I meant them to be our community property." In explanation of his purpose in having the securities in the name of his wife, respondent testified, "Because I desired to have it that way so in case I should die she could dispose of the securities and would have immediate money to take care of my youngsters and herself until such time as my will could be probated."

Summarized, the situation presented is one in which earnings of the wife, community property at the time of their ac-

quisition, were placed in her name in a bank and subsequently a substantial portion of such earnings were used to purchase securities taken in the name of the wife. Although the husband exercised no direct control over the funds, he nevertheless directed and managed the purchases of securities made with the funds. The source of the securities was community funds. Did the husband relinquish his community interest in the funds? The husband testified that he did not intend to relinquish his community interest in the funds and intended that the securities should remain community property, and that they were taken in his wife's name for convenience to avoid probate in the event of his death. The inferences drawn by the trial court herein must be upheld so long as they find reasonable support in the evidence given. (*Williamson* v. *Kinney*, 52 Cal.App.2d 98, 102 [125 P.2d 920].)

Where title is taken in the name of the wife, the testimony of the husband that he did not intend to make a gift of his separate property or of his interest in the community is sufficient, if believed by the court, to overcome the presumption declared by section 164 of the Civil Code. (*Whitaker* v. *Whitaker*, 137 Cal.App. 396, 399 [30 P.2d 538], and cases there cited. In *Estate of Wilson*, 64 Cal.App.2d 123 [148 P.2d 390], a husband made a deed of gift to the wife of real property. Upon the death of the wife it was held that despite the deed, the property was community. The husband there testified that he did not intend a gift, but ''wanted her to get it if anything happened to me. . . . It was . . . community property . . . to go to the one or the other.'' On appeal it was said: ''It is now too well settled to justify more than the citation of authorities that in spite of the mold into which a deed would seemingly press a title, either because of the intent with which the deed was made . . . or made and received . . . or because of an oral agreement between a husband and wife, carried into effect, . . . property which, measured by the deed, would not be community property, nevertheless may be just that. . . .'' (Citing, among other cases, *Tomaier* v. *Tomaier*, 23 Cal.2d 754 [146 P.2d 905].)

Appellants contend that certain articles of jewelry and furs of the wife constituted her separate property. The only evidence in the record to which we are referred indicates that these articles were purchased by the wife herself from community funds. The court was warranted under the evidence in concluding that the articles were not gifts from the

husband made with the intent that they become the wife's separate property. (*Estate of Walsh, supra,* p. 709.)

Whether the claims of respondent for contribution for one-half of the liability of husband and wife on two promissory notes should properly be allowed becomes moot in view of the conclusions above reached as to the main issue of the case.

It is urged that the court erred in sustaining objections to questions asked by appellants' counsel on cross-examination of respondent. The court sustained an objection to a question designed to bring out the fact that respondent husband's account with the stock brokerage firm contained many more sales and purchases and involved much larger sums, than the account of the wife. The same ruling was made with respect to an attempt to show that at the time of the wife's death certain real property was held in joint tenancy and a question as to the husband's net worth. Evidence along these lines had theretofore been admitted, and it is not denied that the husband was ''well-to-do'' and that the wife had comparatively little, if any, assets at the time of the marriage. Appellants sought to go into the source of each individual item of securities appearing on the stock account of the wife. No useful purpose would have been so served, the husband having stated that he could not state in detail any individual transaction. Further testimony along this line would have thrown no light on the intent of the husband and wife. Additional evidence in this regard would have been, as stated by the trial judge, ''an unnecessary repetition.'' Appellants further desired to question respondent husband ''concerning each item on that loan account'' (the loans made by the bank on the security of the stocks held in the wife's name) ''and in particular to ask the purpose for which each loan was made, conversation that he had with his wife concerning them, and the disposition of the proceeds of each loan.'' The trial court properly held that such questions would be material only in the event that it appeared that the separate property of the wife (the stocks here in question) had been pledged to secure the loans. This issue having been resolved against appellants, and the court having decided that the property in question remained community property, inquiry into the purpose of the loans or the understanding between the husband and wife with respect thereto, would serve no useful purpose. In view of the respondent husband's testimony, heretofore adverted to, that it was intended that the property should remain community prop-

erty, the pledging of the stock standing in the wife's name as security for a debt upon which they were both liable is, if anything, corroborative of the husband's contention that it was their intent to hold their property as community regardless of the fact that it might stand in the name of the one or the other. The court, however, did not fully foreclose this line of inquiry. Appellants' counsel was advised by the court: "You may inquire of this witness what, if any, separate property of Mrs. Baer was used. We can assume that his answer would be there was none, in view of the previous testimony. I suppose it would be a matter of inquiry as to whether or not certain stocks that were standing in her name were deposited with the bank as security for these loans.

"Mr. Steelman (counsel for contestants and appellants): I think that now shows on the record.

"THE COURT: Well, that is about as far as you can expect to go then. Anything more than that would probably be a mere conclusion of the witness."

Since the trial court found upon substantial evidence, that all of the securities were community property, inquiry into the use of the proceeds of the loans secured by the pledge of such property would have been futile.

The decree appealed from is affirmed.

York, P. J., and Doran, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 11, 1947.