[Civ. No. 7592.   Third Dist.   Apr. 14, 1949.]

M. A. SLOPER, Respondent, v. FANNIE D. SLOPER, Appellant.

Charles Kasch, Leo M. Cook, Hale McCowen and J. R. Thomas for Appellant.

Mannon & Brazier and Royal E. Handlos for Respondent.

THOMPSON, J.—In a suit for declaratory relief, the trial court determined that a specified portion of the Holland Auto Court in Mendocino County, and the proceeds of sale thereof to the extent of $13,342.90 is community property of plaintiff and his wife, Fannie D. Sloper. From that judgment the wife has appealed.

The spouses acquired the property during their marriage, for the sum of $9,034. Without knowledge of the plaintiff, his wife took title in her own name. After the auto court had been operated by Mr. and Mrs. Sloper for about two years, she sold and conveyed it to the codefendants, Milton J. Milan and wife, for $29,000, subject to a deed of trust to secure the unpaid portion of the purchase price, in the sum of $19,000. Mrs. Sloper retained the $10,000 payment and claimed the auto court and the entire proceeds of the sale thereof, as her separate property.

The judgment also determines that the purchasers of the said property, Milton J. Milan and his wife, are the legal owners and entitled to retain possession thereof. The plaintiff has not appealed, and the right of possession of the property is not involved on this appeal.

The plaintiff and defendant Fannie D. Sloper are husband and wife. They were married March 28, 1943. They were separated June 17, 1947. Each of them was previously married. Plaintiff has an adult son as issue of his previous marriage. Mrs. Sloper has three living children as issue of her former marriage. At the time of their marriage each of them owned separate real and personal properties. Mr. Sloper was, for a time thereafter, employed in the State Forestry Division at a small salary. The Holland Auto Court in Mendocino County included a guest house, residence and eight cottages, owned by Mr. and Mrs. Fred C. Holland. Before and after the marriage of Mr. and Mrs. Sloper, her unmarried brother, Fred Frazer, rented a cottage in that auto court. Plaintiff also rented a cottage and lived on that property. He was acquainted and friendly with Mr. Frazer. After their marriage, Mr. and Mrs. Sloper lived there. Both spouses discussed with Mr. Frazer a proposition of buying and operating the Holland Auto Court jointly. Mrs. Sloper objected to that arrangement. Her brother had no money to invest in the project. The plaintiff testified that she said to her husband, ''I think we had better take it. We can live here as long as the War goes, and we can always get our money back and the interest we pay will be just like rent.'' Mr. Sloper talked with the owners, Mr. and Mrs. Holland, about buying the property. Mr. and Mrs. Sloper discussed with Mr. Schietz, the father of Mrs. Holland, the proposal to purchase that property and was informed by him that it could be bought for $9,000, with a cash payment of $1,000, and the balance on easy terms. Mr. and Mrs. Sloper discussed the matter and agreed to buy it. Mr. Sloper then owned a home in Ukiah, as his separate property, which he afterward sold for $3,600. When he and his wife decided to buy the Holland Auto Court he said to her, ''Well, I haven't got the money right now until I sell that property in Ukiah to make the first payment,'' to which she replied, '' 'I can handle the first payment. He only wants a thousand dollars down and I can handle that' so that was all right with me.'' During the absence of plaintiff the Hollands called and contracted with Mrs. Sloper to sell her the property for $9,034, upon payment of $1,034 cash, and the balance to be paid in installments of $50 per month, with 4 per cent interest on deferred payments. She went with them to the Mendocino County Title Company and executed a written contract on October 9, 1943, in her name as vendee, upon the terms

mentioned. At the same time the owners executed to her a grant deed. A quitclaim deed from Mr. and Mrs. Sloper to the owners was also prepared and signed by Mrs. Sloper. She then made the initial payment of $1,034 from her separate funds. The instruments were left in escrow with the Bank of Ukiah, to be delivered pursuant to instructions upon fulfillment of the contract for purchase of the property. The quitclaim deed was executed as a means of clearing the title in the vendors in the event of default or abandonment of the contract. Mrs. Sloper later told her husband that the documents for purchase of the property had been executed, but she failed to inform him that they were made in her name only, as vendee. He did not see or read the contract or deed of conveyance. He had no knowledge of the fact that the deed and contract named his wife only as the purchaser, until more than two years later. Upon request he went to the bank and signed and acknowledged the quitclaim deed October 16, 1943. He testified that he did not read the instrument and that he supposed it was a note binding himself and his wife to pay the balance of the purchase price. But it contained the names of both spouses as grantors.

Mr. and Mrs. Sloper immediately took charge of the Holland Auto Court and operated it successfully for a period of about two years and a half. Both of them devoted their services and attention to the business. Plaintiff said that he worked there regularly eight to sixteen hours per day. He said he kept the books and collected the rental and receipts, which he turned over to his wife, who kept the cash in their home. He regularly paid at the bank the installments on the contract with proceeds from the property which his wife kept in the house. They made numerous repairs and improvements at considerable expense, which were paid from receipts from the business. He purchased furniture for the place from the Hollands, and paid the interest on deferred installments under the contract, with his own separate funds.

One year later, in October, 1944, Mr. Sloper sold his separate Ukiah property for $3,600. It was subject to a mortgage of $500. He then suggested to his wife that he would apply the remaining $3,000 of said separate funds upon the contract of purchase of the Holland Auto Court, but she said, "No. The place is paying out. Won't be long now. It is doing better than we expected." She added, "It is doing so well now you won't have to pay any more interest. It can pay its own interest." The plaintiff testified that his wife never

told him nor intimated to him that he had no interest in that property "until after the place was sold" by her to the co-defendants, Milton J. Milan and his wife, for $29,000 on August 14, 1946.

In 1946, plaintiff and his wife talked of selling the property. Mr. Milan, a prospective purchaser, came to their home to see them about the proposed purchase. Plaintiff introduced Milan to his wife. Plaintiff and his wife discussed the sale at a price of $20,000. He objected to selling for that price and insisted they could obtain more. She said "I think we had better take it." When he left home to go to the coast for several days, he told his wife, "You better call up Mr. Milan and if he is ready to settle this we will fix up those papers before I go to the coast, because I may be over there ten days." She replied, "I had word from him and he is not ready." When he returned, he said to her, "Well, that has been hanging a long time. We had better fix up those papers with Mr. Milan." She then replied, "They are all fixed up. I have got my money in the bank." He then inquired, "Well, did you put it in a joint bank account?" and she replied, "Oh, no. No, . . . I won't have a joint bank account with anybody, and I never did." That was his first knowledge of the fact that his wife had made the sale, or that she apparently claimed the entire property and proceeds of the sale as her separate property. He said to her, "Well, . . . where do I come in?" and she said, "I am going down and talk to my attorney, see what he has got to say."

On August 14, 1946, Mrs. Sloper, in the absence of her husband, closed the sale of the property to Milton J. Milan and his wife for $29,000. She was then paid $10,000 in cash, which she deposited in her own bank account. She executed to the grantees her deed which reads, "Fannie D. Sloper, dealing with her separate property," as grantor. At the same time the grantees executed and delivered to her their note for $19,000 at 5 per cent interest, payable to her in installments of $160 per month, and secured by a deed of trust to her as beneficiary, dated August 14, 1946, which was recorded the following day at the request of Mendocino County Title Company. She made the final payment May 12, 1946, to the former owners, Mr. and Mrs. Holland of the original purchase price, pursuant to their contract.

Mr. and Mrs. Sloper then quarreled about their community interests and the ownership of the Holland Auto Court property, and the proceeds of sale to the Milans. For the first

time, after the sale of the property to the Milans, Mrs. Sloper claimed the entire property and proceeds of sale as her separate property, and told her husband that if he thought he had any interest in it he had better see an attorney. Their dissensions over that property led to their separation June 17, 1947. This suit was commenced by the plaintiff July 11, 1947.

The complaint alleges that "It was *intended at all times by plaintiff and his said wife* that said real property would be thereby acquired by them as their community property, and not as the separate property of said wife." (Italics added.)

After trial by the court, findings were adopted favorable to the plaintiff. The court determined that said husband and wife "agreed between themselves" to purchase the property for $9,034, and that the wife agreed to pay from her separate funds the initial sum of $1,034, and that the balance of the purchase price would be paid "out of the subsequent earnings of the husband or wife." The court further found that Mrs. Sloper paid on the purchase price, from her separate funds, the total sum of $5,187.22, being 53.99 per cent of the purchase price, and that the balance of the purchase price, to wit, the total sum of $4,445.96, or 46.01 per cent of the entire purchase price, was derived from the community earnings of the husband and wife, by their personal services and income from the operation of the Holland Auto Court. The court further found that all of the allegations of the complaint, not inconsistent with the specific facts found, are true. The court did include in its findings the statement that *"There was no agreement* between them" that they would have equal interests in the property, or that it would be acquired or owned as their community property. But the court did find that the allegations of paragraph II of the complaint are true. It is there alleged the parties at all times *intended* that the Holland Auto Court would become their community property. And the court further specifically found that the husband at all times believed he had an equal community interest in the property, and that he never intended to give to his wife his services or personal expenditures for care and improvement of the property, or his portion of the income therefrom as her separate property. As a conclusion of law the court found that plaintiff and his wife own equal community interests in the property and the proceeds of sale to the Milans "to the extent of $13,342.90." Judgment was rendered accordingly.

The appellant contends that she owns the entire property

and the proceeds of sale thereof, as her separate property; that the evidence does not support the findings or judgment, and that the findings do not support the judgment and are inconsistent for the reason that the court determined by its finding that "there was no *agreement between them*," that the Holland Auto Court would become their community property.

The evidence is conflicting regarding the community interests of the spouses in the property. But we are of the opinion there is adequate evidence to support the findings and judgment, and that the asserted inconsistency in findings may be reasonably reconciled in support of the judgment.

Clearly, the court determined that the spouses own and are entitled to equal community interests in the proceeds of sale of the property to the extent of $13,342.90, and accrued interest thereon. That means each is entitled to one-half of that sum. The findings indicate exactly how the judge arrived at that apportionment of the community interests. That method of figuring the respective interests is further shown by the opinion of the judge. But, of course, the opinion may not be resorted to in lieu of necessary findings. The court gave credit to appellant for all payments which she made from her separate funds. Such payments are not included in the proportion of proceeds of sale which are determined to be community property.

In this case the instruments in writing, including the deeds of conveyances, when the spouses originally acquired the property and when Mrs. Sloper sold it to the Milans, and the contract of purchase, which transfers of title were procured and made by the appellant in the absence and without the knowledge of plaintiff, are not conclusive evidence that appellant owned the Holland Auto Court as her separate property. As between the spouses, her conduct and declarations as related by the plaintiff adequately support the findings and judgment of the court. (*Tomaier* v. *Tomaier,* 23 Cal.2d 754, 757 [146 P.2d 905]; *Huber* v. *Huber,* 27 Cal.2d 784, 788 [167 P.2d 708]; *Silverstein* v. *Silverstein,* 76 Cal. App.2d 872, 876 [174 P.2d 486]; *Rogers* v. *Rogers,* 86 Cal. App.2d 817, 821 [195 P.2d 890]; 41 C.J.S. § 489c, p. 1034.)

It is not necessary in support of findings and a judgment determining community interests of a husband and wife in property acquired after their marriage, to prove a previous *express agreement* between them that it shall become their community property. Oral evidence satisfactorily indicating that the spouses intended that it should be their community

property is competent and adequate to support findings and a judgment to that effect. When an auto court is acquired by agreement of the spouses, and without knowledge of the husband the deed is taken in the name of the wife only, but the property is occupied and operated as a business by both spouses who make valuable improvements and repairs and pay installments on the purchase price from the receipts of the business, the conduct and admissions of the spouses are competent evidence that it was intended by them to become their community property. The presumption created by the deed in the name of the wife only is rebutted by the conduct and declarations of the grantee. In *Huber* v. *Huber, supra,* at page 788, it is said in that regard:

". . . It is likewise true that parol evidence is admissible *to establish the absence of an intention to make a gift* of either separate or community property, although the instrument of conveyance is made by the husband to the wife alone or as joint tenant with him or is from a third person to the wife or to both as joint tenants at the husband's direction in cases where there is no showing of fraud, mistake or undue influence. [Citing authorities.]"

Numerous California cases declare that principle. In *Rogers* v. *Rogers, supra,* it is said at page 821:

". . . And the trial court is not bound to base its conclusion as to the character of the property upon the deeds alone. The form of the deeds is not always necessarily controlling. As was said in *Estate of Wilson,* 64 Cal.App.2d 123, 126 [148 P.2d 390]: 'It is now too well settled to justify more than the citation of the authorities that in spite of the mold into which a deed would seemingly press a title, . . . property which, measured by the deed, would not be community property, *nevertheless may be just that.* . . . [Citing authorities.]'"

And in *Tomaier* v. *Tomaier, supra,* the court said at page 757: "It is the general rule that evidence may be admitted to establish that real property is community property even though title has been acquired under a deed executed in a form that ordinarily creates in the grantee a common law estate with incidents unlike those under the law of community property. Thus land may be shown to be community property even though it is granted to one spouse alone as his or her property in fee simple. [Citing authorities.] Again, it may be shown that husband and wife *intended* to take property as community property even though they accepted a deed

drawn to them as tenants in common. . . . It has in fact been held unequivocally that evidence is admissible to show that husband and wife who took property as joint tenants actually *intended it to be community property.*'' (Italics added.)

We conclude that the evidence adequately shows that the spouses acquired, held and operated the Holland Auto Court, with the intention that it should become, and that it and the proceeds from its subsequent sale are, their community property to the extent determined by the findings and judgment in this case.

■ In view of the specific findings and judgment that the spouses own definite shares of a designated portion of the proceeds of sale of the property, as community property, we are convinced that the further finding that "there was no *agreement* between them" that it would become their community property may be reasonably reconciled in support of the judgment. Evidently, the court intended to determine by that language that there was no previous *express* agreement to that effect. The complaint alleged that "It was intended at all times by plaintiff and his said wife that said real property would be thereby acquired by them as their community property." That allegation was found by the court to be true. Moreover, the court specifically found that the spouses "agreed between themselves" to purchase the property for $9,034, and that the wife agreed to make the initial cash payment of $1,034, after which the remaining installments of $50 per month would be paid "out of the subsequent earnings of the husband or wife." If more specific findings had been adopted on that subject, it is evident they would have been adverse to the appellant. The foregoing authorities indicate that it is the *intention* of the spouses with respect to the character of the property to be acquired, which is controlling, regardless of whether there is an express agreement that it is to become either community or separate property. (*Horton* v. *Winbigler,* 175 Cal. 149, 159 [165 P. 423].) The mere absence of such express agreement is immaterial, if the intention of the spouses is otherwise adequately shown by their conduct or admissions.

In the case of *Horsman* v. *Maden,* 48 Cal.App.2d 635 [120 P.2d 92], which was a suit by the executor of the estate of Emile Maden, deceased, to quiet title to real property, based on a deed of community property from a husband to his wife, the appellate court, in reversing the judgment, held that the presumption created by section 164 of the Civil Code is not

conclusive of the intention of the husband to convey it to her as her separate property. A judgment of nonsuit rendered against the executor was reversed. The appellate court said, at page 640:

"Property may be regarded as community property regardless of whether the record title stands in the name of the husband or of the wife or in the names of both the husband and the wife, and the courts are invested with full power to determine the status of any such property. [Citing authorities.] And where it is claimed that an instrument in writing, executed by the husband to the wife, constituted a gift to the wife and changed the status of community property to that of separate property of the wife, *the question of the intention* of the husband in executing such instrument becomes 'the all-important and controlling question.' [Citing authorities.]"

Upon a subsequent appeal, after retrial of the case last cited, a judgment for the defendant was affirmed. (*Horsman* v. *Maden,* 69 Cal.App.2d 11 [157 P.2d 882].) On the last appeal a reversal of the judgment was urged on the ground, among others, that the court failed to specifically find upon the issue as to whether it was the *intention* of Mr. Maden by his conveyance of the property to his wife to change the status of the property from the community to a separate interest therein. In that case the court found that Mr. Maden "made a deed of gift of the real property." In the present case the court found that the spouses intended to purchase the property and that they own community interests in a specified proportion of the proceeds of sale. In the second Maden case, in which the judgment was affirmed, the court said at page 15:

"Plaintiffs complain with justification that the findings are not carefully prepared. However, they are sufficient to support the judgment. Objection is raised to the court's failure to find on the issue of Maden's intent in making the transfers. It is true that there is no specific finding on this point but the court found that Maden gave the securities to defendant and made a deed of gift of the real property. Implicit in the finding of a gift is a finding of Maden's intent in transferring the property to his wife. The actual transfer of the property plus an intention to give are the constituent parts of a gift. There is ample authority for holding that findings which fully support the judgment will not be set aside on appeal for failure to make a finding on an issue if a finding thereon results by necessary implication from those made. (24 Cal.Jur. § 207, p. 974; 10 Cal.Jur.Supp. § 207, p. 753.)"

248

We conclude that the findings in this case are reasonably reconcilable as previously stated, and that they adequately support the judgment.

For the foregoing reasons the judgment is affirmed.

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied May 14, 1949, and appellant's petition for a hearing by the Supreme Court was denied June 13, 1949. Edmonds, J., Carter, J., and Traynor, J., voted for a hearing.