[Civ. No. 18892.   Second Dist., Div. Three.   June 4, 1952.]

ALBERT R. DeBOER, Respondent, v. JULIA DeBOER, Appellant.

Floyd H. Norris and Clayton B. Thomas for Appellant.

C. E. Clough and Richard M. Durall for Respondent.

VALLÉE J.—Plaintiff-husband brought this action for divorce. He alleged that a parcel of realty, to the value of $11,000, located in El Monte, is his separate property and that defendant-wife has a small community interest therein. In her answer and cross-complaint defendant alleged that the parcel is her separate property. Defendant was granted a divorce. The court found that the parcel of realty is community property and awarded a half interest to each of the parties. Defendant-wife appealed from that part of the judgment adjudging that the parcel is community property, asserting that the evidence is insufficient to support the finding that it is community property.

The parties were married on April 11, 1939. At that time plaintiff-husband owned and operated a dairy in Hynes, now Paramount, with 80 head of cows, and had about $2,000 in a bank account. Plaintiff operated the dairy for a year after the marriage, and then sold the cows for $11,800 and paid off a mortgage of $4,000 on the herd.

About the time the dairy was sold defendant told plaintiff he was being sued, that someone was attempting to serve a paper on him, and suggested that his bank account be transferred to her name. Defendant testified that someone came to the house attempting to serve some papers on plaintiff, that she told him about it, and that his bank account was then transferred to her name to shield him from possible litigation.

Of the money remaining from the sale of the cows $2,250 was used to buy a house and two acres of land in Artesia and about $1,000 was used in improvements on the house. Title was taken in joint tenancy. At the same time, a 10-acre parcel was also acquired from funds provided by plaintiff from the sale of the cows and title taken in joint tenancy.

Before taking title to the parcels in joint tenancy plaintiff consulted an attorney. He asked the attorney if he would be jeopardizing his interest in the property if he placed it in joint tenancy. The attorney told him that it would be for his own protection and that he would not be jeopardizing his interest. The attorney did not explain to him the legal effect of holding property in joint tenancy

or tell him that he would be making a gift to defendant, or say anything about a gift tax or the result in case either party died. He did not know at that time the legal effect of holding property in joint tenancy.

Plaintiff testified defendant insisted that title to the 2- and 10-acre parcels be taken in joint tenancy and on the strength of the advice of the attorney and the insistence of his wife he placed the titles in joint tenancy.

In April, 1941, the 2-acre parcel was sold. The El Monte parcel, equipment of a dairy thereon, and 35 cows, were then purchased. Title to the realty was taken in the name of defendant as her sole and separate property. The purchase price was about $11,000 made up of $2,366.26, the net proceeds from the sale of the two acres, $5,131 additional cash, and the assumption of a mortgage for the balance. When the El Monte property was purchased the 10-acre parcel was conveyed to the defendant-wife alone.

At the time the parties married plaintiff was a member of a milk sales agency which gave him "shipping rights" to sell his milk to a particular creamery. When he sold the dairy he also sold the "shipping rights." The bylaws of the agency apparently provided that upon sale of "shipping rights" a member could not go into the dairy business for a period of five years unless he bought cows with such rights. The El Monte property was operated as a dairy without "shipping rights." Before purchasing the El Monte property, which was two years after the sale of the 80 cows, plaintiff again consulted the same attorney with respect to purchasing the property in question in his own name. Defendant was present. The attorney advised him "that there was a liability that the association would sue me, because I would not be buying out another association member, which is required according to the by-laws." Plaintiff testified that the attorney suggested he put the property in defendant's name and "I didn't like the idea, but since he was my attorney, why, I took his advice." The attorney represented defendant-wife "at the escrow" and in this suit until substituted out immediately prior to the trial. Plaintiff testified that the reason he transferred his bank account to defendant and consented that title to the properties be taken in her name was because of defendant's insistence and because the attorney advised him to do so, and that he "considered it [the bank account and real property] belonged to both of us."

Plaintiff operated the dairy on the El Monte property and a retail milk route therefrom for one year, replaced cows constantly, and deposited the income in a bank account in the name of defendant. Expenses and payments on the mortgage were paid from this account. The parties lived on the property. At the end of one year it was leased. In 1947 plaintiff made improvements on the property costing about $5,000 with money he had earned during the war while employed in a manufacturing plant.

During the time plaintiff operated the Hynes and El Monte dairies defendant helped sell the milk, took care of some of the cash-and-carry trade, kept the books, made the deposits, wrote the checks, did the housework and some work in connection with the operation of the dairy. Plaintiff gave defendant the information that she used in making entries in the books.

Defendant testified she had no recollection of the conversations had with plaintiff at the time of the purchase of the 2- and 10-acre parcels or of the El Monte property.

Defendant told a Mrs. Triplett on one occasion that as soon as she got plaintiff's property in her name she guessed she would get rid of him; on another occasion, that it was taking longer to get his property in her name than she had expected, and that as soon as she succeeded she would probably get rid of him and go back to the matrimonial bureau and get another sucker, and that defendant told her that she (defendant) was "getting somewhere at last. I am getting things into my own name that I told you in the beginning I would do. But it takes longer than I thought it would." Defendant had met plaintiff at a matrimonial bureau.

■ When title is in the wife alone the presumption is that the property is her separate property. (Civ. Code, § 164.) Except as against a bona fide purchaser for value, the presumption is disputable. (*Attebury* v. *Wayland,* 73 Cal.App.2d 1, 5 [165 P.2d 524].) ■ Whether the evidence against the presumption is sufficient to overthrow it, is a question of fact. (*Steward* v. *Paige,* 90 Cal.App.2d 820, 824 [203 P.2d 858].) ■ Evidence tending to establish any facts overcoming the presumption and showing that the property is community property, is admissible in evidence. (*Huber* v. *Huber,* 27 Cal.2d 784, 788 [167 P.2d 708]; *Killian* v. *Killian,* 10 Cal.App. 312, 317-318 [101 P. 806].)

■ The court may consider the motive for the conveyance of property by a husband to his wife and the situation of the parties at the time. (*Williamson* v. *Kinney*, 52 Cal.App.2d 98, 102 [125 P.2d 920].) ■ A determination by a trial court that the presumption has been rebutted is conclusive on a reviewing court unless it is manifestly without support in the evidence. (*Estate of Baer*, 81 Cal.App.2d 830, 833 [185 P.2d 412].)

■ Real property may be shown to be community property even though it is granted to one spouse alone as his or her property in fee simple. (*Tomaier* v. *Tomaier*, 23 Cal. 2d 754, 757 [146 P.2d 905].) ■ In determining whether property is community or separate property of the spouses, a trial judge is not bound by the form of the deed alone. (*Faust* v. *Faust*, 91 Cal.App.2d 304, 308 [204 P.2d 906].) Real property may be found to be other than that indicated by the deed because of the intent with which the deed was made, or made and received. (*Idem.*) ■ There can be no executed gift in the absence of any intention to give on the part of the donor. ■ The mere fact that in the purchase of real property with separate funds of the husband or with community funds the husband directed that the deed should run to the wife as grantee, does not necessarily compel the conclusion that a gift to the wife was intended. Other facts and circumstances may so tend to show another reason than the desire and intent to make a gift, as to furnish ample warrant for a conclusion that no gift was intended, and, therefore, that there has been no executed gift. (*Fanning* v. *Green*, 156 Cal. 279, 282-283 [104 P. 308].)

■ In determining whether the transfer of separate property of the husband or of community property to the wife constituted a gift to the wife and changed the status of the property to that of separate property of the wife, the intention of the husband is "the all-important and controlling question." (*Horsman* v. *Maden*, 48 Cal.App.2d 635, 640-641 [120 P.2d 92].) ■ The intention of the parties as to whether the property became the separate property of the wife under section 164 of the Civil Code may be shown by circumstantial as well as by direct evidence. (*Williamson* v. *Kinney*, 52 Cal.App.2d 98, 102 [125 P.2d 920].) Plaintiff's intention at the time of the purchase of the El Monte property was not secret or undisclosed, as defendant argues. Defendant was present when the attorney advised plaintiff to take title in her name. She knew he did not

intend a gift. ▮▮ Where title is taken in the name of the wife the testimony of the husband that he did not intend to make a gift of his separate property or of his interest in the community property, if believed by the court, is sufficient to overcome the presumption that the property is the separate property of the wife. (*Estate of Baer,* 81 Cal.App.2d 830, 835 [185 P.2d 412]; *Nilson* v. *Sarment,* 153 Cal. 524, 528-529 [96 P. 315, 126 Am.St.Rep. 91]; *Fanning* v. *Green,* 156 Cal. 279, 285 [104 P. 308]; *Whitaker* v. *Whitaker,* 137 Cal.App. 396, 399 [30 P.2d 538]; *Stephenson* v. *Brand,* 122 Cal.App. 543, 545 [10 P.2d 476].) ▮▮ The confusion of separate and community property, so that each is indistinguishable from the other, generally renders the mass community property. (*Grolemund* v. *Cafferata,* 17 Cal. 2d 679, 683 [111 P.2d 641].)

▮▮▮ We think—in view of the evidence which we have recited in the light most favorable to plaintiff, the reasonable inferences to be drawn therefrom, and the rules of law stated—that the trial court was warranted in its conclusion that the parties intended that the parcel of realty in question be, and that it is, community property. (See *Siberell* v. *Siberell,* 214 Cal. 767, 774-775 [7 P.2d 1003]; *Huber* v. *Huber,* 27 Cal.2d 784 [167 P.2d 708]; *Sylvester* v. *Sellers,* 110 Cal.App. 569 [294 P. 411]; *Estate of Bruggemeyer,* 115 Cal.App. 525, 537 [2 P.2d 534]; *Truelsen* v. *Nelson,* 42 Cal.App.2d 750 [109 P.2d 996]; *Estate of Sehabiague,* 47 Cal.App.2d 793, 797 [119 P.2d 30]; *Horsman* v. *Maden,* 48 Cal.App.2d 635 [120 P.2d 92]; *Estate of Piatt,* 81 Cal. App.2d 348 [183 P.2d 919]; *Andrews* v. *Andrews,* 82 Cal. App.2d 521 [186 P.2d 744].)

It is argued that it was the duty of the trial court to deny relief to plaintiff on the ground "that he has unclean hands" because he permitted title to be taken in defendant's name because of fear of lawsuits. In *Watson* v. *Poore,* 18 Cal.2d 302 [115 P.2d 478], the court quoted from *Birney* v. *Birney,* 217 Cal. 353, as follows, page 312 [18 P.2d 672]: " 'As was said in *Chamberlain* v. *Chamberlain,* 7 Cal.App. 634 [95 P. 659], one cannot lay a trap for another, secure his confidence, induce him to make a conveyance of his property in expectation that it will be returned, and thereafter retain the fruits of his perfidy on the ground that the donor too readily yielded to temptation to save himself at the possible expense of his creditors. The greater offense of the tempter overshadows and renders innocuous the weakness of the one of whom

advantage is taken. Though a deed made for an improper purpose is unfairly procured through the undue influence of the grantee, in violation of a fiduciary relationship, abuse of confidence, oppression or fraud, a court of equity will still grant relief to one in fault. Such relief will not be denied to a party least in fault against one who has led him into the act by a violation of confidence. They are not in equal wrong. (*Anderson* v. *Nelson*, 83 Cal.App. 1 [256 P. 294].) Under the circumstances plaintiff should not be denied the relief he seeks.' '' (See, also, 23 West's Cal. Dig. 721, § 172(3) and cases there cited; 37 C.J.S. 1095, § 262.)

The evidence is such that the court was justified in inferring, as it undoubtedly did, that plaintiff's permission to the taking of title to the El Monte property in defendant's name was obtained by her by imposition and abuse of confidence. The unclean hands rule is, therefore, not applicable.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.